**NATIONAL LABOR RELATIONS BOARD**
**v. VALLEY BROADCASTING CO.**

**No. 11212.**

United States Court of Appeals
Sixth Circuit.

June 1, 1951.

Louis Schwartz, Washington, D. C., for petitioner. George J. Bott, David P. Findling, A. Norman Somers, Louis Schwartz, and Robert G. Johnson, Washington, D. C., on the brief.

Carl A. Weinman, Steubenville, Ohio, for respondent. Carl A. Weinman, Berkman, Weinman & Anglin, Steubenville, Ohio, Allen H. Berkman, Robert Engel, Pittsburgh, Pa., on the brief.

Before HICKS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

HICKS, Chief Judge.

Petition of the National Labor Relations Board to enforce its order of December 16, 1949, that the respondent, The Valley Broadcasting Company, cease and

desist from (1) (a) refusing to bargain collectively with Pittsburgh Local American Federation of Radio Artists (AFL) as the exclusive representative of all employee announcers at radio station WSTV, Steubenville, Ohio; and (b) in any other manner interfering with, restraining or coercing its employees in the exercise of the rights of self-organization, to form labor organizations, or to join or assist Pittsburgh Local or any other labor organization to bargain collectively through representatives of their own choosing, etc., and (2) to take specified affirmative action.

Respondent was the owner and operator of Radio Station WSTV at Steubenville, Ohio. John Laux was its general manager and Joseph Troesch was his assistant and there is no question but that respondent was engaged in interstate commerce within the meaning of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq. Donald B. Hirsch, national representative of an American Federation of Radio Artists (AFRA) was located at Pittsburgh. He held two meetings, one in July, 1948 and another on October 4, 1948, with the announcers employed at WSTV. As a result of the meeting of October 4th, the announcers, seven in number, each delivered to Hirsch signed applications for membership in AFRA, herein called "the Union." Each of these applications designated AFRA as the exclusive agent for collective bargaining purposes in any and all matters dealing with the radio industry, etc., and each designation was completely independent of the status of the applicant for membership and as a member should the application be accepted. The announcers not only signed these applications but in addition personally requested Hirsch to proceed at once to bargain with respondent as their representative. With these applications Hirsch returned to his headquarters in Pittsburgh, forty miles away, and on the next day, October 5th, undertook to telephone Laux at Steubenville. Laux was away and Hirsch therefore talked to Troesch, and it is undisputed that he informed Troesch that he was a representative of the AFRA and there is substantial evidence that he

further told Troesch that the announcers at WSTV had signed the application blanks and that the Union had been designated bargaining representative by the announcers and that unless respondent recognized the Union it would file a petition for certification with the National Labor Relations Board, and that upon being asked categorically if he would recognize the Union, Troesch answered that he would not. The Union did file such petition on October 15th but later withdrew it.

Laux was not only general manager of station WSTV but of a number of other radio stations, among which was station WPIT at Pittsburgh. There is a controversy as to whether Troesch and Hirsch made an agreement to meet Laux for a conference at WPIT on October 6th. This is not particularly material because no such meeting was held. However, Troesch did meet Laux in Pittsburgh on October 6th and reported to him the telephone conversation with Hirsch. Moreover, Teolis, one of the announcers, testified that at a meeting of the announcers called by Troesch on or about October 15, 1948, at a time when Laux and Troesch each knew that the announcers had signed application forms for membership in the Union, Troesch brought out a contract which the Company had with its engineers and said that the engineers were pleased with it "and that he would like to do the same for us"; that it was a good contract "and it gave us security over a period of three years" and that "if that contract looked acceptable to us, we would have one made on a similar structure, including periodic raising and hiring and firing clauses to be included." Teolis testified that he asked Troesch, "Why are we going through looking at any other kind of a contract when we have signed these A. F. R. A. application blanks and all those who were present had signed, and we were interested in becoming members of the organization?"; that Troesch replied in substance, "Why should we call in an outsider"; he said, "We are one small family and we can handle our own problems without calling in some one else." Teolis further testified, "Well, I asked Mr. Troesch why he didn't

want A. F. R. A. in the organization, and Mr. Troesch told me that there are Communist elements in every union, and un-American elements, and he said eventually, if unions do become stronger, or words to that effect, that there may come a day when radio stations and businesses are told what to do." He further testified, "Mr. Troesch said that if anyone is so interested in A. F. R. A. he would be glad to give a recommendation to that gentleman to take an A. F. R. A. station, it would be a very good recommendation." Teolis further testified that in this discussion Troesch said that he would agree to any kind of an agreement except an AFRA agreement.

Shortly after the designation of AFRA as the exclusive agent of the announcers for collective bargaining, respondent, without consulting the Union, by written memoranda addressed to each of the announcers except Cochran, raised the pay rate of each announcer ten cents per hour. Cochran's compensation was not raised because he had received a substantial increase approximately one month earlier. Each memorandum was dated October 1, 1948, and indicated that it was written by Laux but he did not testify as to when he wrote them, although he was a witness. He testified he would have delivered them earlier but for the press of business.

On October 16, 1948, Troesch called another meeting of the announcers and submitted to such of them as were present a written agreement dated October 16th to be signed by them individually. These proposed contracts in addition to setting forth some of the existing conditions under which the announcers had been working, accorded to them additional benefits. They set out a new and increased wage schedule effective January 1, 1949, as well as period wage increases and granted employment for three years. They also provided for overtime pay, talent fee payments, annual bonuses, vacations and a grievance procedure. These contracts were never signed by the announcers but they were accepted and their Union plans were abandoned. Donly, an announcer, testified, "At that time the men themselves tried to take a

long range look, and, frankly, the majority of them needed the money in the worst way, and I guess just like a man would grab a straw when he saw himself going under, they decided to grab the straw, taking a quick negotiation, and even if it meant separation from the former idea of having a union, and they dropped the idea of the union, or intended to drop the idea of the union because of the fear that if such a thing were continued, it might be taken as an antagonistic move, * * *."

Following this action, Cochran, on October 26, 1948, wrote a letter to Hirsch. The gist of this letter may be found in one sentence, "The boys have decided against A. F. R. A." On November 10th, following the receipt of this letter, the Union filed with the Board unfair labor practice charges against respondent. When a copy of these charges was received by Troesch he took it to Cochran's office and showed it to some of the announcers and declared that "something has to be done," whereupon Cochran said, "I will write a letter." On November 17, 1948, he did write a letter to the Board upon respondent's letterhead in which he said in substance that the Union could not win in an election and that the announcers' withdrawal was not the result of company intimidation. His exact words were, "There was no effort used to intimidate anyone." Then Cochran, with Troesch's assistance, solicited and received six of the announcers' signatures to the letter. Hirsch testified that at a conference between himself, Laux, Troesch and Berkman, President of respondent, December 28, 1948, he renewed his request for recognition which was definitely refused.

■ Such in substance are the evidential facts found by the Trial Examiner and confirmed by the Board. The Board found that the conduct of respondent through its agents Laux and Troesch, constituted a violation of Sec. 8(a) (1) of the Act, and we concur.

■ We have examined and considered the record as a whole, Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456; N. L. R. B. v. Pittsburgh S. S.

Co., 340 U.S. 498, 71 S.Ct. 453, and we conclude that the evidence, except as hereinafter mentioned, upon which the Board based its findings of a violation of Sec. 8(a) (1), is substantial and it is not our function to substitute contrary inferences. National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 130, 64 S.Ct. 851, 88 L.Ed. 1170; National Labor Relations Board v. Nevada Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305.

We think it is clear that after the telephone conversation between Hirsch and Troesch on October 5th the respondent, through its general manager and assistant general manager, began a systematic effort to defeat the contemplated unionization of the announcers. This was accomplished not only through the active efforts of Troesch but by successive raises in rates of pay, and offerings of contracts embodying economic benefits. The fact that there had been sporadic raises in the pay of the announcers prior to October 5, 1948 does not negative the inference that pay raises after that date were intended to counteract the activities of the Union.

█ It is not a sufficient defense for respondent to say that the announcers had not become members of the Union by signing the application blanks. The applications for Union membership implied the authority to bargain. N. L. R. B. v. Consolidated Mach. Tool Corp., 2 Cir., 163 F.2d 376, 378. To the same effect see N. L. R. B. v. Louisville Ref. Co., 6 Cir., 102 F.2d 678, 680; N. L. R. B. v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 687.

█ It is urged upon us that all that was said by Laux and Troesch in their negotiations with the individual announcers was in the exercise of free speech guaranteed by the First Amendment to the Constitution. We cannot within the reasonable limits of an opinion set out the testimony as to all statements made by these officials to the announcers but we conclude that they were, in their general tenor, coercive and alluring in their nature. N. L. R. B. v. Bailey Co., 6 Cir., 180 F.2d 278, 280; N. L. R. B. v. Elyria Telephone Co., 6 Cir., 158 F.2d 868.

█ We do not think that the statement in Cochran's letter to the Board that there were no efforts made to intimidate any one is conclusive. This was a matter for determination by the Board. In Bethlehem Shipbuilding Corp. v. N. L. R. B., 1 Cir., 114 F.2d 930, 937, the court said: "This is a subtle thing, and the recognition of constraint may call for a high degree of introspective perception." This statement had approval in N. L. R. B. v. Donnelly Garment Co., 330 U.S. 219, 231, 67 S.Ct. 756, 91 L.Ed. 854.

█ After a careful examination of the record we are unable to say that there was substantial evidence that the Union through Hirsch ever presented respondent with a clear demand to bargain. On this point we agree with the dissenting member of the Labor Board, Mr. Murdock, but as hereinbefore stated, the respondent did know that the Union had been designated as a bargaining representative for the announcers and with full knowledge of this fact it undertook to bargain with them as individuals. This it could not do. The Union was the exclusive representative of the announcers. Sec. 9(a) of the Act; Labor Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 44, 57 S.Ct. 615, 81 L.Ed. 893; Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 684, 64 S.Ct. 830, 88 L.Ed. 1007. In the Medo case, 321 U.S. at page 684, 64 S.Ct. at page 833, the court said: "That it is a violation of the essential principle of collective bargaining and an infringement of the Act for the employer to disregard the bargaining representative by negotiating with individual employees, whether a majority or a minority, with respect to wages, hours and working conditions was recognized by this Court in J. I. Case Co. v. [National] Labor [Relations] Board, 321 U.S. 332, 64 S.Ct. 576 [88 L.Ed. 762]; cf. Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 64 S.Ct. 582, [88 L.Ed. 788]; see also National Licorice Co. v. [National] Labor [Relations] Board, 309 U.S. 350, 359–361, 60 S.Ct. 569, 575, 576, 84 L.Ed. 799. The statute guarantees to all employees the right to bargain collectively

through their chosen representatives. Bargaining carried on by the employer directly with the employees, whether a minority or majority, who have not revoked their designation of a bargaining agent, would be subversive of the mode of collective bargaining which the statute has ordained, as the Board, the expert body in this field, has found. Such conduct is therefore an interference with the rights guaranteed by § 7 and a violation of § 8(1) of the Act." See also May Dept. Stores Co. v. N. L. R. B., 326 U.S. 376, 384, 66 S.Ct. 203, 90 L.Ed 145; N. L. R. B. v. Elyria Tel. Co., supra, 158 F.2d at page 872.

It is manifest that respondent not only carried on negotiations with the individual announcers before they revoked the designation of the Union as their bargaining agent, but an acceptable inference is that the revocation was the result of the activities of respondent through its agents.

Finally, our conclusion is that in so far as petitioner seeks to establish a violation of Sec. 8(a) (5), its petition is dismissed, but in all other respects a judgment will be entered enforcing its order.