## NATIONAL LABOR RELATIONS BOARD v. REEDER MOTOR CO.
### No. 11570.

United States Court of Appeals
Sixth Circuit.
April 3, 1953.

Arnold Ordman, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Arnold Ordman and Nancy M. Sherman, Washington, D. C., on the brief), for petitioner.

Clyde W. Key, Knoxville, Tenn. (Clyde W. Key, Knoxville, Tenn., on the brief), for respondent.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

PER CURIAM.

The petitioner seeks a decree enforcing its order that the respondent cease and desist from refusing to bargain collectively with Local 900 of the International Union of Operating Engineers AFL as the exclusive bargaining representative of its employees, from dealing individually with such employees, from discouraging membership in the Local, interfering with the exercise of their rights of self organization, as authorized by Section 8(a) (3) of the National Labor Relations Act, 29 U.S. C.A. § 158(a) (3), and affirmatively directing it to bargain with the Local and to reinstate two discharged employees. The respondent denies engaging in the unfair labor practices.

Since Congress has charged us with the normal and primary responsibility for granting or denying enforcement of Labor Board orders under Section 10(e) of the Taft-Hartley Act, 29 U.S.C.A. § 160(e), National Labor Relations Board v. Pittsburgh Steamship Company, 340 U.S. 498–502, 71 S.Ct. 453, 95 L.Ed. 479, we have given careful study to the entire record. The respondent is a Tennessee corporation engaged in the servicing and selling of automobiles and trucks at Oak Ridge Tennessee. Late in January, 1950, a campaign was begun to unionize the twelve employees of its service department and by March 1, 1950 nine had signed union cards. On March 3rd, a representative of Local 900 called upon the respondent's general manager, Reeder, and informed him that the union represented a majority of its employees. He offered no proof of it and Reeder's evidence at the hearing, that he expressed desire for an election, though not categorically traversed, is not credited by the Board. On March 10th, the union representative in company with another official of the union again called upon Reeder and left with him a specimen contract which he stated was designed to be submitted to all service garages in the neighborhood. No specific demands were made upon Reeder and no request made of him for a meeting at which grievances were to be aired and bargaining thereon begun. Reeder wished to show the contract to his lawyer and unless it may be inferred from that fact, there is nothing in the record to support an inference that the respondent recognized the union as the bargaining representative of its employees. Neither Reeder nor the union agent requested a further meeting. On March 14th eight employees who were all the members of the union, after one had resigned, and included Williams, its elected shop steward, asked for a meeting with Reeder and Kirby, his sales manager.

What led up to this request is fully explained by the record. It is summarized in the testimony of Childers, the spokesman at the meeting: "Well, we had gone just about as far as we could. We didn't know what was happening and everybody was confused all the time, and we thought we could work out something—and Mr. Holbrook (the union agent) promised he would have a contract signed by February 28, but this was much later and we hadn't seen him, or heard of him. The shop steward called him two or three times and couldn't get him up there. So we decided if we could, we would stand on our own feet."

The following facts are established beyond contradiction: the meeting was at the behest of the men and not the employer; the union was not there mentioned; the employer had manifested no hostility to unionization; had asked no one to join or not to join or to resign from the union after joining. Indeed, the order of the petitioner recites: "It is further ordered that the complaint be and it hereby is dismissed insofar as it alleges that the respondent interrogated the employees on or about March 4, 1950, solicited the employees to resign from the union on or about March 6, 1950 and promised financial and other benefits to employees on certain conditions on or about March 8, 1950."

At the meeting of March 14th, the employees collectively asked for increase in wages, retention of the vacation plan, furnishing of uniforms by the company and their laundering, and the discharge of Jones and Patty. Patty had not joined the union and Jones had already resigned. Substantially, their demands were granted. A few days later, the employees all resigned from the union. Thereafter, on March 16, 1950, the union representative, for the first time, made written request of the respondent for a conference to negotiate a contract concerning wages, hours of work and other conditions of employment. The respondent's attorney replied that the union had not been designated to represent the employees and suggested that a Board election be held. Nothing further transpired until the complaint was lodged with the Board.

 The union had neither been certified nor recognized as a bargaining agent for respondent's employees and no negotiations for a contract were pending. The designation of a bargaining agent is not irrevocable, N.L.R.B. v. West Ohio Gas Company, 6 Cir., 172 F.2d 685. The em-

804

ployer had not sought to undermine the bargaining agent. The employees had themselves bypassed their representative because they were unable to secure information or obtain results. The employer was justified in assuming that the men either had abandoned the union or had decided to abandon it. The Board thought it reasonable to require that the withdrawal of authority be evidenced with the degree of formality required to establish the original designation. We are unable to agree. This would exalt form over substance and make the interest of the agent of paramount importance rather than that of his principals. Jones and Patty had been discharged under compulsion and not for union activities. "It was easier to replace two men than to replace eight." The case is unique and is distinguishable in the circumstances above recited from Medo Photo Supply Corporation v. N. L. R. B., 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007, and N. L. R. B. v. Valley Broadcasting Company, 6 Cir., 189 F.2d 582, upon which the Board relied.

Enforcement denied.