GLENDALE MANUFACTURING COMPANY, Appellant,

v.

LOCAL NO. 520, INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL–CIO, Appellee.

No. 8089.

United States Court of Appeals Fourth Circuit.

Argued June 6, 1960.

Decided Nov. 10, 1960.

Herbert L. Hyde, Asheville, N. C. (Van Winkle, Walton, Buck & Wall, Asheville, N. C., on brief), for appellant.

Robert Cohn, Atlanta, Ga. (Morris P. Glushien, New York City, and Earl Fowler, Asheville, N. C., on brief), for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and CHARLES F. PAUL, District Judge.

HAYNSWORTH, Circuit Judge.

An employer appeals from an order requiring it to bargain with a decertified, minority union. Its principal position was that the question about which the union wishes to negotiate became moot when an earlier contract between the employer and the union expired. We find no merit in the contention. Questioning the propriety of an order requiring an employer to bargain with a union which does not represent the employees, we requested additional briefs, which have been filed with us.

We cannot affirm the order.

On October 15, 1955, the employer and the union entered into a collective bargaining agreement for a term ending almost three years later, on September 30, 1958. Included in this agreement was a clause [1] permitting an annual reopening of wages in the event of a change of at least five per cent in the Consumer's Price Index of the Department of Labor. It provided that if the parties were unable to agree upon the reopened wage question, it should be treated as a dispute, subject to adjustment as such. By other clauses of the contract, disputes were made arbitrable.

On April 29, 1958, the union undertook to exercise its asserted right to reopen the wage question, the Consumer's Price Index having risen 7.31% since the execution of the contract. The employer contended the provision for annual reopening of the wage question was referable to contract anniversary dates and that there was no right to reopen the question five months before the contract was to terminate. This dispute went to arbitration. The arbitrator, agreeing with the union, ruled that the word "annually" meant only that the question could not be reopened more frequently than once in any 12-month period and that the union had a right to reopen it in April.

In that proceeding the union sought to have the arbitrator fix the wages. The arbitrator refused to do that upon the ground that the contract made the reopened question one for negotiation, and it could become subject to arbitration only if negotiation and the preliminary procedures for the adjustment of disputes failed to produce agreement. The

1. "The wage terms and terms herein contained may be subject to reopening annually in the event of a change of at least five (5%) percent in the Consumers Price Index of the U. S. Department of Labor. Should the parties for any reason fail to reach agreement upon such increase, then such disagreement shall be treated as a dispute under this agreement and be adjusted as any other dispute, through the machinery for adjustment of disputes, as provided in this agreement."

award, therefore, was a direction to the parties to negotiate the matter.

The arbitrator's award was announced on September 24, 1958. Six days later, on September 30, 1958, the contract expired. On the next day, October 1, 1958, under the supervision of the National Labor Relations Board, a representation election was held among the employees of this employer. The election resulted in a rejection of the union and its decertification by the Board.

Over a month later, in November 1958, the union, which had lost its certified status and no longer represented a majority of the employees, requested the employer to negotiate with it on the question of wages for the 5-month period, May through September, 1958. When the employer declined, the union filed this action to enforce the arbitrator's award directing such negotiation.

The District Court granted the union's motion for summary judgment.[2]

■ The employer's principal contention on appeal is that the wage question became moot when the contract expired. We do not agree. If the union had not lost its certified status, the law would have required the employer to bargain in good faith with the union on the terms of a new contract and on the wages for the final five months of the old contract period. These bargainable issues would not be eliminated or restricted by expiration of the old contract. By force of the reopening of the wage question, the employees, during the 5-month period, had been working for indeterminate wages to be fixed by subsequent agreement. So long as the union was their bargaining representative, it had the exclusive right to negotiate that agreement for them and the employer was under a duty to deal with it.

■ In the District Court, the employer had advanced the union's decertification as a reason for not enforcing the arbitrator's direction to negotiate with it. Since the District Judge did not discuss the point in his opinion, it is possible it got lost in the multiple, futile defenses set up by the employer. Concerned that we were being asked to affirmatively order the commission of an unfair labor practice, we requested additional briefs addressed to the point. We have concluded we cannot order an employer to bargain on the subject of the employees' wages with a union which does not represent the employees.

The basic policy of the National Labor Relations Act,[3] as amended, is incorporated in § 7 of that Act.[4]

It is plain that employees have the right by virtue of § 7 to designate a union to represent them and it is equally plain that they have the right to decline to be represented by a union. By § 8(a)(1) of the Act the employer is guilty of an unfair labor practice if he interferes with the employees' right to join a union, or with their right not to join or be represented by a union. Similar interference by a union is an unfair labor practice under § 8(b) (1). There are many cases which hold that employers committed unfair labor practices when they entered into agreements, affecting the employees generally, with a favored or minority union.[5] These are not cases

2. 179 F.Supp. 222.

3. 29 U.S.C.A. § 151 et seq.

4. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities ex-

cept to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

5. See Machinists Local v. National Labor Relations Board, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832; Elastic Stop Nut Corp. v. N. L. R. B., 8 Cir., 142 F.2d 371; N. L. R. B. v. Booker, 5 Cir., 180 F.2d 727; Katz v. N. L. R. B., 9 Cir., 196 F. 2d 411; N. L. R. B. v. John Engelhorn

of employer domination resulting in an order of disestablishment of the dominated union, but are cases where the union was truly independent, but, for some reason, was favored by the employer with the result that he deprived his employees of the right not to be represented by that union. The same principle has been applied where a company constructs a new plant and enters into a contract with the union, representing others of its employees elsewhere, with respect to the new plant before a representative number of new employees had been employed at the new plant and had exercised their right to choose.[6] Administratively, the general counsel of the Board ruled in 1956[7] that an extension of an existing contract to a new plant was not an unfair labor practice if the new plant was merely an accretion to an existing unit, but, if the new plant is really a separate unit, the employees at that plant, after their employment, have a right under § 7 to be represented by a union if they wish it, and a right not to be if they do not wish it.

■ There are some exceptions, of course, to the rule that the employer may not bargain with a minority union.

The courts and the Board are agreed that after a union has won an election and has been certified, the employer is under the duty to bargain with the certified union for a reasonable time even though the union loses its majority. We held in Poole Foundry & Machine Co. v. N. L. R. B., 4 Cir., 192 F.2d 740[8] that an employer could not refuse to bargain with a certified union where only four months had elapsed after adoption of a settlement agreement. The Board has a general rule which it applies that it will not entertain another representation petition for one year from the date of certification, and, of course, under the present act, there is a continuing duty of the employer to bargain with a certified union at least until a decertification petition has been filed, for that is now the only means by which a question of the majority status of a certified union can be raised.[9] If an incumbent union has not been certified, however, and loses its majority, the employer has not only the right, but the duty, to cease bargaining with it.[10]

Another exception to the general rule arises where the loss of majority status has been occasiond by the employer's unfair labor practices.[11]

Here, we have none of those things. The union has been decertified, which means that the Labor Board has certified that it is no longer the representative of the employees, and it cannot become a proper representative of the employees until it re-establishes its majority status. There is no claim that the union lost its majority status by an unfair labor practice of the employer; indeed, it would not have been decertified by the Board if an unfair labor practice had occasioned its loss of members. The union claims generally that its loss of its majority was the fault of the employer, but it did not charge in the representation case that the employer committed an unfair labor practice and there is no basis on this record

& Sons, 3 Cir., 134 F.2d 553; N. L. R. B. v. Goshen Rubber and Mfg. Co., 7 Cir., 110 F.2d 432; N. L. R. B. v. National Motor Bearing Co., 9 Cir., 105 F.2d 652; Douds v. Anheuser-Busch, Inc., D.C.N.J., 99 F.Supp. 474.

6. Douds v. Anheuser-Busch, Inc., D.C.N.J., 99 F.Supp. 474; see Elastic Stop Nut Corp. v. N. L. R. B., 8 Cir., 142 F.2d 371.

7. Case No. K–299, 2 CCH Labor Law Reporter, par. 3815.333.

8. See also N. L. R. B. v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217;

N. L. R. B. v. Century Oxford Mfg. Corp., 2 Cir., 140 F.2d 541.

9. Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125.

10. N. L. R. B. v. Reeder Motor Co., 6 Cir., 202 F.2d 802; N. L. R. B. v. Mayer, 5 Cir., 196 F.2d 286.

11. Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; N. L. R. B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; Great Southern Trucking Co. v. N. L. R. B., 4 Cir., 139 F.2d 984; N. L. R. B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632.

for a finding that it did. It seems, therefore, that we have the simple case of a minority union seeking to act as the exclusive representative of the employees with respect to their wages for this limited period. If we compel the employer to bargain with this union under these circumstances, we compel the employer and permit the union to commit an unfair labor practice in violation of the rights guaranteed to the employees under § 7.

The courts have been extremely careful to protect the rights of employees under the act and to avoid ordering an employer to bargain with a union if there was even so much as doubt about the majority status of the union.

In National Labor Relations Bd. v. Inter-City Advertising Co., 4 Cir., 154 F.2d 244, 245, an employer committed an unfair labor practice by refusing to bargain with an incumbent union. Thereafter, the union lost its majority status under circumstances which led the Court to conclude that its loss was not the fault of the employer. Because of the unfair labor practice, the refusal to bargain, the Board had ordered the employer to bargain with the union, but this Court, notwithstanding it found that the unfair labor practice had been committed at a time when the union did represent the majority, refused to enforce the order. Judge Soper said:

" * * * It follows that when a union majority has been dissipated without fault on the part of the employer the union no longer possesses the authority to speak for the employees and an order of the Board that requires the employer to bargain with the union cannot be enforced. * * * "

We conclude that this uncertified, minority union has no right to represent the employees and the employer no right to deal with it as the representative of the employees. Should they deal with each other on any such basis, they would invade the statutory right of the employees.

We do not understand the union to really question these principles. Rather, it leaps to the assumption that the contract created a fixed, accrued right to a wage increase proportionate to the increase in the cost of living. In effect, it asserts here what it unsuccessfully asserted when it attempted to have the arbitrator fix the wages by ordering a 7.31% increase.

■ The contract is not susceptible to that interpretation. Indeed, the union's action is to enforce the arbitrator's award, which directs negotiation only. It cannot consistently seek enforcement of the award and disclaim the necessity of negotiation.

We conclude that the union cannot exercise a right of representation it no longer possesses and the employer should not be forced to commit an unfair labor practice by dealing with the union as the representative of the employees.

■ Our conclusion does not affect the substance of the award, however. The award was valid when it was made. It became unenforceable only subsequently when the employees repudiated their previously designated agent. The difficulty is with the procedural direction of the award. Its substantive declaration of the right of the employees to negotiate the wage question, and to arbitrate it if need be, was not made unlawful by the events of September 30—October 1, 1958. The decertification of the union required only an amendment of the award to revoke the commitment of the rights of the employees to their repudiated agent.

Under the circumstances, it seems appropriate to refer the entire matter back to the arbitrator who may reframe the award in the light of subsequent developments. Unless the substantive right of negotiation has been foreclosed by other events, he may order the employer to negotiate the wage question with the employees directly or with any properly constituted committee or representative of the employees. The specific procedures to implement his award should be developed by the parties in interest or prescribed by the arbitrator after inquiry. Those remedial procedures which,

in the light of current conditions, are most practical and most likely to facilitate a resolution of the question may thus be employed.

The judgment will be vacated and the case remanded to the District Court for further proceedings not inconsistent with this opinion.

Vacated and remanded.