**FEDERATION OF UNION REPRESENTATIVES,**
**Plaintiff,**

v.

**UNITE HERE, Defendant.**

**Nos. 09 Civ. 9368 (JSR),**
**10 Civ. 4153 (JSR).**

United States District Court,
S.D. New York.

Sept. 10, 2010.

Barry I. Levy, Max S. Gershenoff, Rivkin Radler, LLP, Uniondale, NY, for Plaintiff.

Nathaniel K. Charny, Nathaniel K. Charny, Esq., Rhinebeck, NY, for Defendant.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiff Federation of Union Representatives ("FOUR"), a labor union, brings these actions against defendant UNITE HERE ("UH") to confirm an arbitral award that was entered in FOUR's favor on May 29, 2009 and to compel UH to submit to the arbitrator's jurisdiction to implement that award. UH has moved for summary judgment dismissing both actions on the ground that FOUR lacks standing to enforce the award. FOUR has cross-moved to compel UH to appear before the arbitrator for the limited purpose of finalizing the award. For the following reasons, the Court hereby grants UH's motions, denies FOUR's cross-motion, and dismisses both actions for lack of standing.

The facts relevant to the instant motions are undisputed: FOUR is a labor organization, and prior to October 2, 2009, FOUR was the collective bargaining representative for all organizers, business agents, professional employees, educational staff, and boycott apprentices who were on UH's payroll (the "Bargaining Unit Employees"). UH Local Rule 56.1 Statement of Material Facts Not in Dispute, 6/11/10 ("UH 56.1") ¶ 1.[1] (UH itself is an international labor union, but for all purposes relevant to this action it acts as employer to employees at one point represented by FOUR. FOUR Statement Pursuant to Local Rule 56.1, 6/11/10 ("FOUR 56.1") ¶ 2.) In 2006, FOUR and UH entered into a collective bargaining agreement effective between June 10, 2006 and September 10, 2010 (the "CBA"). *Id.* ¶ 7. The CBA contains an arbitration clause requiring the arbitration of all covered disputes that cannot be resolved through a step grievance procedure. *Id.* ¶ 8.

In early 2007, a dispute arose regarding automobile insurance reimbursement payments made by UH to certain of its FOUR-represented employees required to use their personal cars for their employment, after UH decided to treat those payments as taxable income and withheld money from the reimbursements that it issued. *Id.* ¶¶ 12–13. On July 31, 2007, FOUR filed a grievance challenging this practice, and this grievance was eventually submitted to an arbitrator for resolution. *Id.* ¶¶ 13–15. On May 24, 2009, the arbitrator issued an opinion and award (the "Award") in FOUR's favor, concluding that UH violated the CBA by treating the reimbursement payments as taxable income. *Id.* ¶ 20; *see also* Compl., 09 Civ. 9368, Ex. 2 (Award), at 17. The Award directed UH to: (1) cease and desist from treating these reimbursements as taxable to the employees until the parties might negotiate otherwise; (2) take remedial steps to implement the foregoing, such as using a "grossing up" system; and (3) make bargaining members whole for the tax improperly withheld from the reimbursement payments. Award at 17. Finally, the arbitrator retained jurisdiction over disputes arising from the implementation of the Award. *Id.*

Beginning in June 2009, FOUR attempted to meet with UH to implement the Award, and requested certain documents relating to reimbursement payments and withholdings. FOUR 56.1 ¶ 24. These efforts were rebuffed. *Id.* ¶¶ 25–27. Accordingly, FOUR requested that the arbitrator convene a hearing for purposes of implementing the Award, which he scheduled to take place on October 19, 2009. *Id.* ¶ 28.

On or about September 15, 2009, UH was presented with a petition signed by a

---

1. All citations to a party's statement of undisputed facts made pursuant to Local Rule 56.1 incorporate the corresponding paragraphs of the opposing party's response.

majority of UH's Bargaining Unit Employees requesting to be represented by the Union of Unite Here Staff ("UUHS"). UH 56.1 ¶ 2. On October 2, 2009, the principal officer of UH advised FOUR that UH was withdrawing its recognition of FOUR as the exclusive bargaining representative for its employees and was instead recognizing UUHS as the exclusive bargaining representative for the remainder of the term of the CBA. *Id.* ¶¶ 3–5.

On October 7, 2009, FOUR's counsel issued a subpoena directing UH's Director of Human Resources to appear at a hearing before the arbitrator on October 19, 2009. FOUR 56.1 ¶ 30. Thereafter, UH's counsel advised the arbitrator that in its view, the arbitrator had no jurisdiction to determine any claim regarding the implementation of the Award and that UH would not be appearing at the hearing. *Id.* ¶ 31. The arbitrator advised the parties that the hearing would proceed as scheduled, and UH did not appear at the hearing or comply with the subpoena. *Id.* ¶¶ 32–33. UH has not taken any remedial steps to implement the Award, nor has any union other than FOUR asked that it do so. *Id.* ¶¶ 34, 36.

On January 7, 2010, FOUR filed an unfair labor practice charge against UH with the National Labor Relations Board ("NLRB") alleging that UH violated the National Labor Relations Act ("NLRA") by, among other things, withdrawing recognition of FOUR on October 2, 2009. UH 56.1 ¶ 6. Following the NLRB's investigation into the charge, UH was advised that FOUR withdrew the portion of its charge alleging that UH violated the

NLRA by withdrawing recognition of FOUR, *id.* ¶ 7, and FOUR has never requested that the NLRB hold an election to challenge UUHS's present status as the exclusive bargaining representative for UH's employees, *id.* ¶ 9. On March 29, 2010, however, the NLRB issued a complaint against UH arising from, among other things, FOUR's unfair labor practice charges regarding UH's refusal to arbitrate the outstanding automobile insurance grievance or comply with FOUR's subpoenas. *See* FOUR Mem. in Support, 6/11/10, Ex. 1, at 3–4.[2]

The instant motions pertain to two separate complaints filed by FOUR in this Court. First, in the complaint docket-numbered 09 Civ. 9368, which was filed on November 10, 2009, FOUR seeks, *inter alia,* an order compelling UH to submit to arbitration for purposes of implementing the Award and to produce documents in connection with the arbitration hearing. Second, in the complaint docket-numbered 10 Civ. 4153, which was filed on May 20, 2010, FOUR seeks confirmation of the Award pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* UH has moved for summary judgment dismissing both actions for lack of standing, and FOUR has cross-moved for summary judgment in the first-filed action compelling UH to submit to arbitration for the purpose of allowing the arbitrator to compute the appropriate measure of damages.

The threshold issue presented by these motions is whether FOUR maintains standing to enforce the Award even though FOUR has been decertified and

**2.** On August 10, 2010, an administrative law judge ("ALJ") issued a decision and recommendation with respect to this complaint concluding, in part, that UH "did not violate the [NLRA] when it refused to further arbitrate [the automobile reimbursement] grievance because FOUR had been replaced as the legitimate collective bargaining representative by

another union." *UNITE HERE!,* Case No. 2–CA–39534, 2010 WL 3285409, slip op. at 14 (Aug. 10, 2010). For purposes of this opinion, the Court assumes *arguendo* that FOUR is correct that the ALJ's preliminary legal conclusions are not entitled to any substantial deference.

replaced by another union as the exclusive bargaining representative for the Bargaining Unit Employees. For the following reasons, the Court holds that FOUR no longer has "standing,"[3] and, accordingly, dismisses the complaints.

■ According to UH, FOUR's position in this litigation is in significant tension with the NLRA's principle of exclusive representation. Under that Act, when a majority of employees in a bargaining unit designate a union as their exclusive bargaining representative, the employer is required to negotiate with that union—and, importantly, not with any other union. *See Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 683–84, 64 S.Ct. 830, 88 L.Ed. 1007 (1944) ("The National Labor Relations Act makes it the duty of the employer to bargain collectively with the chosen representatives of his employees. The obligation being exclusive, it exacts 'the negative duty to treat with no other.'" (citation omitted)). UH argues that a straightforward application of that principle compels the conclusion that these actions must be dismissed for lack of standing, as there is no dispute here that FOUR was properly decertified as the Bargaining Unit Employees' exclusive representative and replaced in that capacity by UUHS. Thus, UH argues, even though FOUR had standing to obtain the Award because it was the proper representative at the time, now that UUHS is the representative, and

FOUR is not, FOUR may not bring these actions to confirm and enforce the Award.

In support of its position, UH relies in part on Judge Herlands' decision in *Kenin v. Warner Bros. Pictures, Inc.*, 188 F.Supp. 690 (S.D.N.Y.1960), which presented the question of "the extent to which a labor union ... can effectively assert a contract claim against the employer ... and negotiate with the employer after the expiration of their collective bargaining agreement and after the union has been superseded by another duly certified bargaining representative," *id.* at 691. In *Kenin*, the plaintiff, a musicians' union (the "Federation") was a party to collective bargaining agreements with the defendant, Warner Brothers Pictures, Inc., giving the Federation the right to negotiate with Warner Brothers with respect to television use of movie soundtracks produced during the life of the agreements. The last of the relevant collective bargaining agreements expired on February 19, 1958, and, later that year, a different union (the "Guild") was certified as the musicians' exclusive bargaining representative pursuant to a NLRB election. In 1960, the Federation objected to Warner Brothers' plans to distribute certain movie soundtracks covered by the agreement for television use, demanded that Warner Brothers negotiate with it prior to doing so, and went to court to seek a preliminary injunction to that effect. The court denied the injunction

---

**3.** The parties have briefed this question as an issue of standing. *Cf. Am. Postal Workers Union v. U.S. Postal Serv.*, 823 F.2d 466, 477 (11th Cir.1987) (characterizing question of whether a local union was authorized by its parent to bring suit as "arguably more akin to 'capacity' to sue rather than 'standing'"). As has often been noted, "'[s]tanding' is not a term used for its precision." *Thompson v. County of Franklin*, 15 F.3d 245, 247 (2d Cir.1994) (quoting *Graddick v. Newman*, 453 U.S. 928, 938, 102 S.Ct. 4, 69 L.Ed.2d 1025 (1981) (opinion of Rehnquist, J.)). Indeed,

the parties' papers—and the cases on which the parties and this Court rely—invoke "standing" to refer to a variety of constitutional, prudential, statutory, and contractual doctrines. For purposes of this opinion, the Court adopts the parties' shorthand and uses the word "standing" in a broad, practical sense to refer to FOUR's burden to show that it is a "a proper party to invoke judicial resolution of the dispute." *Id.* at 249 (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)) (internal quotation mark omitted).

and held that the Federation no longer had standing to enforce contractual rights on behalf of the musicians. The court found instead that the Federation's request would have an "immediate and substantial" impact on the relationship between Warner Brothers and the Guild and would effect an impermissible "fragmentation of the collective bargaining process," reasoning as follows:

> The tug and strain of collective bargaining over the terms and conditions under which defendant may induce plaintiff to grant its consent to defendant's disposition of its music sound tracks cannot be isolated from other aspects of the subject of compensation and work-product of defendant's present employees. Defendant's employees—now represented by the Guild—include the very musicians in whose behalf and for whose benefit plaintiff proposes to bargain with defendant.
>
> . . .
>
> If it be assumed arguendo that plaintiff is not chargeable with a conscious specific desire to usurp Guild's legitimate and protected functions, the situation is fraught with the risk that—regardless of the assumed purity of plaintiff's motives—Guild's activities as the certified bargaining representative would be substantially obstructed. That is the transcendent issue.
>
> During the time when defendant is legally obligated to deal exclusively with Guild, any negotiations between defendant and plaintiff concerning current terms and conditions . . . is bound substantially to burden and obstruct or to tend to burden and obstruct the collective bargaining relationship between defendant and the Guild. The court will not issue an injunction when its reason-

ably probable effect would be violative of national labor policy.

*Id.* at 694–95.

In addition to *Kenin,* UH cites cases from other circuits that suggest that once a union is decertified, it loses standing to assert any rights whatsoever arising from the collective bargaining agreement to which it was once a party. *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Schilli Corp.,* 420 F.3d 663, 669 (7th Cir. 2005) ("[The union's] authority to represent all bargaining unit employees and to enforce any contractual rights it had negotiated on behalf of those employees as a class dissolved at that point [of decertification]." (citing cases)); *Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Local 4-487,* 338 F.3d 440, 441–42 (5th Cir.2003) ("When the Union was decertified, such employees lost all job protection under the CBA."); *Glendale Mfg. Co. v. Local No. 520, Int'l Ladies' Garment Workers' Union,* 283 F.2d 936, 939–40 (4th Cir.1960) ("The union has been decertified . . . and it cannot become a proper representative of the employees until it re-establishes its majority status. It seems . . . that we have the simple case of a minority union seeking to act as the exclusive representative of the employees with respect to their wages. . . . If we compel the employer to bargain with this union under these circumstances, we compel the employer and permit the union to commit an unfair labor practice in violation of the rights guaranteed to the employees [under the NLRA].").

FOUR seeks to avoid the force of these holdings on several grounds, but the Court finds these distinctions to be unavailing. First, FOUR rightly points out that *Kenin* involved a grievance that did not accrue until the expiration of the collective bargaining agreement, whereas here, it is un-

disputed that UH's reimbursement decisions leading to the Award all took place while the CBA was in force and while FOUR was the exclusive representative. But while *Kenin* may be factually distinguishable in this respect, it is irrelevant to the guiding principle enunciated in *Kenin*, *viz.*, the NLRA's policy of "eliminat[ing] ... the economic evil of parallel and overlapping claims of rival unions directed against the same employer and involving the same employees," 188 F.Supp. at 695. The force of that concern is not dependent on the time when the underlying grievance arose.[4]

Second, FOUR cites several cases in support of the proposition that when a union serves as collective bargaining representative and obtains certain contract rights under that agreement, the expiration of the agreement or the decertification of the union does not in all circumstances strip the union of the ability to enforce those rights. *See, e.g., Int'l Union, U.A.W. v. Telex Computer Prods., Inc.*, 816 F.2d 519, 523 (10th Cir.1987) ("[D]ecertification does not retroactively obliterate contract rights. Events which may change relations between and among employer, union, and employees may impact but do not destroy the right to redress arising under and relating to a valid preexisting con-

tract."); *U.S. Gypsum v. United Steelworkers*, 384 F.2d 38, 46 (5th Cir.1967) ("With respect to grievances relief for which is operative up to the time of decertification the Union clearly has the right to assert them."); *see also Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205–06, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) ("A postexpiration grievance can be said to arise under the contract [and thus be arbitrated by the union] only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement."). None of these cases, however, involves a situation where a new union represents the employees who were subject to the collective bargaining agreement under which the grievance arose. Indeed, to varying degrees, these cases acknowledge that the analysis would be different were there a successor union on the scene. *See, e.g., Livingston v. John Wiley & Sons*, 313 F.2d 52, 58 (2d Cir. 1963) (concluding that "the fact that the contract has now terminated does not of itself bar arbitration," but then noting that "[t]here is no showing that the Union here

---

**4.** *Small v. Frank*, 1996 WL 50658 (E.D.Pa. Feb. 5, 1996), a decision cited by FOUR, is superficially similar to the instant lawsuit in that it involved a grievance arising while a former union was the employees' exclusive bargaining representative; the decertification of the former union and its replacement with a new union; and the new union's failure to pursue the grievance. The court in *Small*, however, was not asked to determine whether the employer was legally obligated (or even permitted) to negotiate the grievance with the old union. Rather, the plaintiffs in *Small*, who were the employees who initially filed the grievances, moved for summary judgment against their former union following the arbitrator's dismissal of the claims that the for-

mer union brought on their behalf. After the arbitrator dismissed their claims as untimely, the plaintiffs alleged that the former union breached its duty of fair representation by representing them in the arbitration despite the union's decertification and replacement. While the court held that the former union's continued representation did not amount to a breach of this duty, it explicitly noted that it was not asked to determine whether the new union should have represented the employees with respect to the arbitration. *Id.* at *3 & n. 6. Thus, to the extent *Small* suggests that a presence of a new union does not destroy the former union's standing to arbitrate an old grievance, that suggestion is *dictum* in a case that in any event is not binding on this Court.

has been decertified" and that "[t]here is here no rival union, whose rights would be interfered with by the Union's pressing of these employee claims" (citing *Kenin*, 188 F.Supp. 690)), *aff'd*, 376 U.S. 543, 551 & n. 5, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *U.S. Gypsum*, 384 F.2d at 46 ("Since the union has presumably obtained the disputed 'right' in the first instance by getting it in the contract, there does not seem to be any reason why it should not be the champion of that right when the controversy comes alive, certainly not where there is then no competing union claiming to be the contemporary bargaining representative."), *quoted in Telex*, 816 F.2d at 523.

▓ Thus, while certain of the above-cited cases may permit a decertified union to continue to pursue certain grievances that arose prior to its decertification or the expiration of the agreement, the Court does not read these cases to apply where, as here, a successor union is certified. This is because these cases rest on the implicit premise that a majority of bargaining unit employees support that union's continued representation at least for the purpose of pursuing the vested grievances; but when a successor union has been designated as the exclusive representative under the same CBA, that assumption cannot be sustained. Here, as FOUR acknowledges, it was a party to the Award only in its representative capacity. Now that those employees have chosen a new union, it cannot be said to represent them in any respect, whether implicitly or explicitly.[5]

To be sure, there is no indication in the record as to why UUHS, which is not a party to these actions, has not yet taken any action to enforce the Award. But there are a multitude of hypothetical reasons why not pursuing enforcement of the Award could be a perfectly legitimate move on UUHS's part: for example, a decision to forego enforcement could serve as a bargaining chip for the union in negotiations over wages, benefits, or any other aspect of the collective bargaining relationship. To allow FOUR, which has now been repudiated by a majority of the Bargaining Unit Employees, to take any action with respect to the Award would quite obviously interfere with any such negotiations or strategic considerations.

What is more, permitting FOUR to continue acting as the employees' representative, even for the limited purpose of enforcing the Award, would appear to cause UH to run afoul of the statutory duty to deal only with the exclusive bargaining representative. Certain aspects of the Award on their face call for prospective negotiations between the union and the employer; for example, the Award requires UH to "cease and desist from shifting liability for ... automobile insurance reimbursement onto bargaining unit members, until such time as the parties may negotiate otherwise," and calls for UH to "take whatever remedial steps necessary to implement" the foregoing order. Award at 17. Perhaps anticipating that requiring UH to engage in prospective negotiations with FOUR would likely vio-

---

**5.** While the arbitration clause in the CBA specifically identifies FOUR as the employees' representative for the arbitration of grievances arising under that agreement, *see* Compl., 09 Civ. 9368, Ex. 1(CBA), art. 25, this specificity of identification is of no moment. FOUR was a party to the arbitration leading to the instant Award only in its capacity as the employees' bargaining representative, not in

its own right. Thus, the arbitration clause's reference to FOUR does not mean that FOUR may remain a party to the arbitration even after its decertification and replacement. *See Central States*, 420 F.3d at 669 ("Decertification terminates a union's rights by operation of law without regard to the language of the contract.").

late the NLRA, FOUR now limits its requested relief to that portion of the Award that requires UH to "make bargaining unit members whole for all moneys already withheld." *See* FOUR Mem. in Support, at 4 n. 4. But even this retrospective component of the Award would likely require some negotiation between UH and FOUR, as UH apparently takes the position that covered employees are not entitled to any compensation even under the terms of the Award, and it is undisputed that the amount of damages has not yet been calculated. For this reason too, it cannot be the case that FOUR has standing to bring either of these actions in respect of the Award.

The Court does not doubt FOUR's good faith in seeking to implement the Award for the benefit of the employees covered by the Award, whose rights the successor union has taken no action to enforce. But if any of UH's employees in fact feel aggrieved by this turn of events, such grievances must be pursued by the employee or the successor union, not the decertified union. None of the covered employees is a party to these actions, and there is no indication in the record that any such employee has been foreclosed from asserting his or her rights with respect to the Award, whether by demanding that UUHS take action, seeking decertification, or bringing a lawsuit, *see, e.g., Carrion v. Enter. Ass'n,* 227 F.3d 29, 33 (2d Cir.2000) (describing "hybrid" claim that may be brought by an employee against her union for breach of the duty of fair representation and against her employer for breach of the collective bargaining agreement).

For the foregoing reasons, the Court concludes that the decertification of FOUR and the later designation of UUHS as the Bargaining Unit Employees' exclusive representative together divest FOUR of any right to enforce or confirm the Award in any respect. Accordingly, both actions are hereby dismissed, with prejudice.

The Clerk of the Court is directed to enter final judgment dismissing the above-captioned cases.

SO ORDERED.