**WASHINGTON SCIENTIFIC INDUSTRIES, INC., a Minnesota corporation, Plaintiff,**

**v.**

**AMERICAN SAFEGUARD CORPORATION, a New York corporation, individually and doing business as "American Safeguard Engineer, ASE Division American Safeguard Corporation," and James Radcliffe Meade, Defendants.**

**No. 4–69 Civ. 270.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 4, 1970.

Lindquist & Vennum, by Edward M. Glennon, Minneapolis, Minn., for plaintiff.

Altman, Geraghty, Leonard & Mulally, by Alan W. Weinblatt, St. Paul, Minn., for defendants.

NEVILLE, District Judge.

Defendants ask for a dismissal of the above declaratory judgment action arising out of an alleged contract on three bases: (1) lack of service on defendants, attempted to be made by plaintiff under the Minnesota long-arm "single act" statutes; (2) lack of the jurisdictional amount of $10,000 necessary to sustain this as a diversity action in federal court; (3) impropriety of the declaratory judgment form of action.

Plaintiff admits that sometime after August 1967 it made a written contract with the corporate defendant, which acted by and through its president defendant Meade, whereby the defendant corporation was to act for plaintiff as a sales representative within a certain territory and in relation to certain customers. Plaintiff is a Minnesota corporation having its principal place of business in Minnesota. The corporate defendant is a New York corporation having its principal place of business within that state and defendant Meade is a resident of Pennsylvania or New York. The corporate defendant, through its counsel, threatened suit against plaintiff shortly before the commencement of this action, claiming commissions due in excess of $50,000 as the result of a breach of, and arising out of, the aforesaid contract. Plaintiff brings this declaratory judgment action admitting an indebtedness to the corporate defendant of $2,510.62 and no more and asking for an adjudication to that effect. Service was effected on the corporate defendant by mail through the office of

the Minnesota Secretary of State under the long arm statute, Minn.Stat. § 303.13 Subd. 1(3). Personal service has been attempted on the individual defendant Meade, by the United States Marshal at Hatboro, Pennsylvania, whose return indicates the leaving of a true and correct copy of the summons and complaint with defendant Meade's wife at the Meades' Pennsylvania residence.

■ Plaintiff asserts that the corporate defendant made "* * * a contract with a resident of Minnesota [plaintiff] to be performed in whole or in part by either party in Minnesota * * *." within the meaning of Subd. 1(3) above. In response, the affidavit of defendant Meade states that "None of the above named defendants at any time had any dealings with [plaintiff] * * * in the State of Minnesota * * *." The deposition of defendant Meade, however, taken at Norristown, Pennsylvania on October 10, 1969 indicates that Meade, president of the corporate defendant, came to Minneapolis, Minnesota, on or about August 17 and 18, 1967 to solicit plaintiff to make the defendant corporation its sales representative in an area outside Minnesota; that he then met and was introduced to the "key" people in plaintiff corporation; that he spent an afternoon and "a couple of hours the following morning" at plaintiff's plant and offices discussing a possible contract. Later, on October 9 and 10, 1967 Meade returned to Minneapolis at plaintiff's expense and spent two or three complete days going through "training sessions so to speak". Meade testified:

" * * * Yes, there was enough of a meeting of the minds on that August trip for me to get started for Washington Scientific here in the East, to be further confirmed by a formal contract."

The court is quite clear that this is sufficient contact with the State of Minnesota to enable the plaintiff to invoke jurisdiction through the long-arm statute. Obviously at least plaintiff's portion of the contract would be performed within Minnesota not only in writing checks in payment of defendant's services, but in addition issuing directions, carrying on correspondence, making shipments, etc. Jurisdiction under this long-arm statute has been maintained in cases where the activity within Minnesota is no greater than here. Hagberg v. Colonial & Pacific Frigidways, Inc., 279 Minn. 396, 157 N.W.2d 33 (1968); Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N.W.2d 381, cert. denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961). See Washington Scientific Indus., Inc. v. Polan Indus., Inc., 273 F.Supp. 344 (D.Minn.1967).

■ Attempted personal service outside the State of Minnesota on the individual defendant Meade however must be quashed. It appears from Meade's deposition and is further demonstrated by the voluminous correspondence between the parties attached to the affidavit of Bernard E. Kinney on file herein that the original written contract is between the plaintiff and the corporate defendant and not Meade, the individual defendant, and that the parties in their dealings right up to the time of commencing this suit so regarded it. It is elemental that if an agent acts within the scope of his authority for a disclosed principal, he is not bound on a contract made in his principal's name, nor can he himself sue on any such contract. An agent performs his function when he brings two parties together into a contractual relationship and thereafter he "drops out of the picture" and has no further interest in the contract. If any possible claim were to be asserted that Meade in any way acted beyond his authority, it seems clear that the corporate defendant has long since ratified his actions by receiving benefits under the contract and thereafter claiming additional amounts due thereunder.

Minn.Stat. § 303.13 Subd. 1(3) by its very wording relates exclusively to foreign corporations and does not include individuals. No statute nor case to the contrary has been called to the court's

attention and the court is not aware of any such.

Plaintiff however in claiming personal service on Meade outside the State purports to rely on Minn.Stat. § 543.19 Subd. 1(b), another and more recent long-arm statute. This permits the courts of the State of Minnesota to exercise personal jurisdiction over nonresident individuals if in person or through an agent the nonresident individual "transacts any business within the state." The statute also includes a type of *quasi in rem* jurisdiction and renders amenable to the court's jurisdiction an individual who commits a tort within the State or a tort without the State which causes injury or damage within the State. Since this latter statute did not become effective until May 16, 1967, there is a paucity of authority on the precise question. So far as the court can find, the Minnesota Supreme Court has not had the opportunity to pass on such. The case of Hunt v. Nevada State Bank, Minn., 172 N.W.2d 292 (1969), discusses this statute but the court there was dealing with the effect of tortious conduct and did not reach the question presented here.

■ The question for decision is, does an agent who acts within the scope of his authority "transact any business within the State" under Minn.Stat. § 543.19 so as to render himself amenable to process as an individual when he comes into Minnesota and makes a contract not on his own behalf but on behalf of his principal? This court is of the view that he does not so "transact business" in the sense that is intended in the statute. Service on him, if made within the State, might well constitute service on his principal but such is not involved here. The agent does not make himself a party defendant in a contract suit where as a matter of substantive law he is not a party thereto and can neither sue or be sued on the contract. The allegations of the complaint do *not* sound in tort. The situation of course would differ if an agent came into the State and committed a tort

for then, even though the agent was acting within the scope of his authority and "was about his Master's business" if he committed a tortious act he would be liable along with his principal, the latter albeit vicariously. He then does not "drop out of the picture" so as to avoid the consequences of his tort. Such is not the situation here. No tort is pleaded nor alleged. Before the court is merely the existence of a contract or contractual dealing on the basis of which plaintiff admits owing $2,510.62, with the corporate defendant claiming an amount due in excess of $50,000. In the court's opinion the legislature could not and did not mean to attach liability to an agent by permitting service of process in such a situation. A discussion of Section 1(b) above may be found in 52 Minn.L.Rev. 698, 723 and particularly at pages 747–749, though not directly touching on this question.

■ The second part of the corporate defendant's motion raises an interesting question. It asserts that by the very allegations of plaintiff's complaint, it claims to owe defendant $2,510.62 and no more and thus plaintiff, by so pleading has ushered itself out of Federal Court. The authorities do not support defendant's position in this regard. It is the court's view that in a diversity action the jurisdictional amount of $10,000 is satisfied if on a realistic basis it can be said that there is a claim either asserted or which will be or which is reasonably apt to be asserted and which cannot with certainty be said to result only in a recovery less than the jurisdictional amount. Plaintiff's counsel agreed, as would the court, that if defendant were to file a document reducing its claim to less than $10,000, then the case should be dismissed from this court. Defendant has refused so to agree.

Security Ins. Co. v. Jay, 109 F.Supp. 87 (D.Minn.1952), was an action for declaratory judgment concerning the obligation of an insurer under an automobile liability policy in which the

**740**

defendant was the insured. The court rejected defendant's claim that the court lacked jurisdiction since no suit had been instituted nor claim made under the insurance policy and therefore it was not known whether the required dollar jurisdictional amount was met. The court stated in part:

" * * * The mere fact that a claim has not been filed should not determine if the court does or does not have jurisdiction. * * * Each case must be determined on its realistic facts.

* * * For the Court not to take judicial notice of the almost invariable practice of litigants to seek the maximum amount in their claim or complaint would ignore what is known to lawyer and layman alike. * * * " 109 F.Supp. at 89

See 6A Moore's Fed.Prac. ¶ 57.23 at 3140, for a discussion of life insurance cases where the insurer instituted a declaratory judgment or similar type of action alleging its liability to be less than the jurisdictional amount. The federal courts quite consistently have held that jurisdiction does exist where the face of the policy or the value of the contract exceeds the jurisdictional amount, even though the plaintiff alleges its actual liability to be substantially less.

In the case at bar plaintiff admits that $2,510.62 is due, whereas defendant claims "in excess of $50,000." While this cannot be said to be the "face amount" or "value" of the contract, it is rather obvious that sooner or later plaintiff will be faced with a claim where the "matter in controversy" undoubtedly will approach the latter figure. Two letters from defendant's counsel first assert a claim for $50,000 and second advise that the corporate defendant "has instructed me to proceed with suit." The court thus has no hesitancy in ruling that the amount in controversy is in excess of $10,000. For other instructive cases see Davis v. American Foundry Equip. Co., 94 F.2d 441, 115 A.L.R. 1486 (7th Cir. 1938) (involving a contract other than insurance); United States Fidelity & Guaranty Co. v. Pierson, 97 F.2d 560 (8th Cir. 1968); 115 A.L.R. 1489. In the *Davis* case the court said: "The value in controversy is the value of that which it is sought to have declared free of doubt * * *."

Defendant's third contention is that the maintenance of a declaratory judgment action is discretionary with the court in that 28 U.S.C. § 2201 states that in an actual controversy, "any court of the United States * * * *may* declare the rights * * *." etc. [emphasis added]; that plaintiff here recognized the possibility that suit might be brought against it in Pennsylvania or some remote jurisdiction and "raced to the court house" to file the declaratory judgment case in this court; that defendant thus is deprived of its choice of forum, for if the litigation remains here defendant will be required to file a compulsory counterclaim and conduct its litigation here. This argument lacks substance, and to the extent that maintenance of a declaratory jurisdiction action is in fact discretionary, the court exercises its discretion to retain the action here. Plaintiff is in business, likely as not securing credit and making bank borrowings, and it has a real interest in determining its liability to defendant so that its financial statement will not be required to show a contingent liability of $50,000 or any amount unless or until an adjudication is made as to the amount actually due.

Rule 57 of the Federal Rules of Civil Procedure retains to the parties the right to a jury trial, which certainly encompasses defendant's counterclaim, if and when asserted and if a jury trial be demanded.

A separate order has been entered.