**LOCAL 1852 WATERFRONT GUARD ASSOCIATION OF the PORT OF BALTIMORE I. W. A., a labor organization**

**v.**

**AMSTAR CORPORATION and Steamship Trade Association of Baltimore, Inc.**

**Civ. A. No. 73–133–N.**

United States District Court,
D. Maryland.

Sept. 14, 1973.

Wilfred L. Davis, New York City, and Philip H. Goodman, Baltimore, Md., for plaintiff.

John Henry Lewin, Jr., and Venable, Baetjer & Howard, Baltimore, Md., and John D. O'Brien, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., for defendant Amstar Corp.

A. Adgate Duer and Paul B. Lang, Niles, Barton & Wilmer, Baltimore, Md., for defendant Steamship Trade Ass'n of Baltimore, Inc.

NORTHROP, Chief Judge.

Defendants Amstar Corporation (Amstar) and Steamship Trade Association of Baltimore (S.T.A.) have moved for dismissal of the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) or in the alternative for Summary Judgment, Fed.R.Civ.P. 56.

## FACTS

Plaintiff Local 1852 Waterfront Guard Association of the Port of Baltimore, I.W.A. (Union) is a labor organization that represents guards and/or watchmen employed in the Port of Baltimore. Defendant S.T.A. is the duly authorized bargaining representative of employers engaged in the shipping industry in the Baltimore port. Defendant Amstar owns and operates a sugar refining facility in the Inner Harbor area of the Port. In its business Amstar obtains raw sugar from ocean going vessels, processes it at the refinery, and sells the refined sugar to industrial users, grocery chains, and the federal government. Amstar has been a member of S.T.A. for the past 25 years.

Effective October 1, 1950, the Union entered into a collective bargaining agreement with S.T.A., who was acting on behalf of all of its employer members, whereby the Union was designated the exclusive agent for all employees who performed security work in certain specified areas of the Port, e. g. watching gangways, pier properties, cargo to and from the ships, etc. In a collective bargaining agreement effective January 1, 1966 between the Union and S.T.A., the following paragraph was added to the language of prior agreements in an apparent attempt to enlarge the Union's jurisdiction:

It is the intent and purpose of the Association and the Union that this agreement will promote and insure the security of the Port of Baltimore and Vicinity and harmonious labor relations between the parties, and that *any security work*, performed for employers *in connection with the piers, immediate pier areas*, or cargo on ships or security work in connection with passengers in the Port of Baltimore and Vicinity *shall be done exclusively by members of the Union.* [Emphasis Added].

This paragraph was incorporated into the agreement of January 1, 1970, which was in effect at the time the dispute in the instant case arose.

Throughout the existence of these agreements, Amstar never employed any person to perform guard or security work on the pier areas, for the cargo of the ships, or at its warehouses. From 1922 to 1960, however, Amstar did employ guards, some non-union and some represented by the Meatcutters Union, at the refining facility itself. In 1960, Amstar entered into a contract with a private agency, Pinkerton's, Inc., whereby Pinkerton would perform this security work. From that time to the present, Pinkerton has furnished Amstar with nine guards or watchmen, none of whom are members of the Union or any other union.

The Union did not assert jurisdiction over the work performed by the Pinkerton guards until 1972 when it filed a grievance with S.T.A. This grievance was submitted to arbitration pursuant to section 9 of the collective bargaining agreement. On October 2, 1972, the arbitrator sustained the Union's grievance

on the grounds that (1) the addition of ¶ 2 in the 1966 agreement enlarged the Union's jurisdiction to any security work in connection with the piers and immediate pier areas; (2) the Pinkerton guards were performing security work in connection with the pier and immediate pier areas. Therefore, the arbitrator declared that all nine guards employed at Amstar's facility must become and remain members of the Union.

Upon Amstar's failure to abide by or enforce the terms of the arbitration award, the Union has brought suit for enforcement pursuant to Labor-Management Relations Act of 1947 § 301, 29 U.S.C, § 185. To facilitate discussion, the motions to dismiss or for summary judgment by Amstar and S.T.A. will be taken up separately.

## MOTION OF STEAMSHIP TRADE ASSOCIATION TO DISMISS OR FOR SUMMARY JUDGMENT

Steamship Trade Association asserts that Union has failed to state a claim upon which relief can be granted, because Union has failed to allege any wrongdoing on behalf of S.T.A. In response, Union contends that S.T.A. should be retained as a party defendant in the interests of "judicial economy" and because the "implementation of the award may eventually require the presence of S.T.A. and some direction to it in a final judgment in this action."

■■■ It is an elementary principle of pleading in federal court that a complaint must state "a claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). This phrase has been construed by the Supreme Court to require only " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). In other words, the pleader must set forth the prima facie elements of the claim in such a manner as to fairly apprise the adverse party of action

against him. 2A J. Moore, Moore's Federal Practice ¶ 8.13, at 1700 (1972); *see* United States v. Employing Plasterers' Ass'n, 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954). Since a suit to enforce an arbitration award is in reality a suit seeking performance of a private contract, *see* N.L.R.B. v. Bell Aircraft Corp., 206 F.2d 235, 237 (2d Cir. 1953), all the elements of a contract action must be stated. *See* Employing Plasterers' *supra*; 2A J. Moore, *supra* ¶ 8.17[6], at 1761. One such element —that the defendant has not performed his obligations under the contract, specifying the nature of the obligation—is critical to the determination of S.T.A.'s motion in the instant case.

■■■ Upon full consideration of the Union's complaint and collective bargaining agreement in light of the foregoing principles, the Union has failed to state any obligation, much less a breach thereof, on the part of S.T.A. with reference to the enforcement of the award. First, in its complaint Union states that S.T.A. is the duly authorized bargaining representative of the employers, and that S.T.A. executed the agreement in question on behalf of all its members. Paragraphs 3 & 5 of Complaint. It is a well-settled principle of agency law that an agent acting within the scope of his authority for a disclosed principal is not bound on a contract made in the principal's name. Washington Scientific Industries, Inc. v. American Safeguard Corp., 308 F.Supp. 736, 738 (D.Minn. 1970). Secondly, Union declares that the submission of the dispute with Amstar to arbitration was proper and in accordance with the arbitration procedure section of the collective bargaining agreement. Paragraph 7 of Complaint. Union thus has admitted that the duty of S.T.A. to supervise the arbitration proceeding was fulfilled. Finally, the only wrongdoing or breach of an obligation that Union has alleged appears in paragraph six (6) of the complaint and refers to only Amstar's failure to implement the award. Therefore, since the complaint has failed to set forth a criti-

cal element of a claim, namely, an obligation that S.T.A. has failed to perform, S.T.A.'s motion to dismiss, pursuant to Rule 12(b)(6) must be sustained. *Accord*, Altman v. Central of Georgia Ry. Co., 254 F.Supp. 167, 170–171 (D.D.C. 1965).

Accordingly, the motion to dismiss of defendant, Steamship Trade Association has been granted, with leave to plaintiff to file an amended complaint. Plaintiff is hereby given twenty (20) days from the date of filing hereof within which to amend its complaint.

## MOTION OF AMSTAR CORPORATION TO DISMISS OR FOR SUMMARY JUDGMENT

Amstar sets forth three basic contentions in support of its motion:

(A) The Arbitrator's award is "palpably faulty" and should not be enforced.

(B) Union is estopped from seeking enforcement of the award.

(C) The award is unenforceable because any manner of enforcement of the award would violate national labor policy embodied in the National Labor Relations Act.

### (A).

■ Before assessing the validity of Amstar's contention that the arbitrator's award was palpably faulty, the proper role of a federal court in reviewing an arbitration award must be determined. The Supreme Court squarely addressed this issue in United Steel Workers v. Enterprise Wheel and Car Corp., 363 U. S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) and stated that "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." 363 U.S. at 599, 80 S.Ct. at 1362. "Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement." 363 U.S. at 597, 80 S.Ct. at 1361. The Supreme Court thus has enunciated clearly an attitude of judicial deference to arbitration awards. The Court found a compelling rationale for this judicial hands-off policy in the fact that the device of arbitration was a successful means by which industrial disputes may be peacefully settled. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). As a result, lower courts have refused to overrule an arbitrator because they disagree with his interpretation of the contract, Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777, 398 F.2d 735 (7th Cir. 1968), because they disagree with the arbitrator's finding of fact, International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Local No. 874 v. St. Regis Paper Co., 362 F.2d 711 (5th Cir. 1966), or because the award was ambiguous, Kroger Co. v. International Brotherhood of Teamsters, 380 F.2d 728 (6th Cir. 1967).

■■ The arbitrator's discretion in interpreting the agreement, however, is not unlimited. The Supreme Court in *Enterprise Wheel* stated that an award is legitimate only so long as it draws its essence from the collective bargaining agreement. Unfortunately, this "essence" test lacks sufficient specificity to provide lower courts with a consistent and workable standard in exercising their function of review. Thus, standards have varied from Circuit to Circuit —*see, e. g.*, Local 7–644 Oil, Chemical & Atomic Workers International Union v. Mobil Oil Co., 350 F.2d 708 (7th Cir. 1965) (enforce the award as long as the arbitrator did not act arbitrarily); Dallas Typographical Union No. 173 v. A. H. Belo Corp., 372 F.2d 577 (5th Cir. 1967) (enforce even though the arbitrator did not apply sound legal principles). In the Fourth Circuit, the Court of Ap-

peals has stated that a court should interfere only "where the arbitrator clearly went beyond the scope of the submission." Textile Workers Union of America v. American Thread Co., 291 F.2d 894, 896 (4th Cir. 1961). *Accord,* Truck Drivers & Helpers Union Local No. 784 v. Ulry-Talbert Co., 330 F.2d 562 (8th Cir. 1964) ; Western Iowa Pork Co. v. National Brotherhood Packinghouse and Dairy Workers, Local No. 52, 366 F.2d 275 (8th Cir. 1966). Therefore, as this Court stated in its opinion in Communications Equipment Workers, Inc. v. Western Electric Co., 320 F.Supp. 1277 (D.Md.1970), "[o]ur scope of review must . . . be limited to a determination of whether the [arbitrator] acted within [his] authority and whether there are facts to support [his] decision." 320 F.Supp. at 1280; *see also* Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3d Cir. 1969). It is the opinion of this Court in the instant case that the arbitrator did not clearly exceed the scope of his authority in interpreting the collective bargaining agreement.

Paragraph two of the agreement states in relevant part that "any security work . . . in connection with the piers, immediate pier areas . . . shall be done exclusively by members of the Union." The arbitrator applied this provision to the present factual setting and found that a significant part of the Pinkerton guards' duties, namely, the surveillance of the parking lots, was security work in connection with the pier areas and that thus all nine guards at Amstar's refinery must become and remain members of the Union. Amstar, on the other hand, asserts that the Pinkerton guards are unaffected by this enlargement of the Union's jurisdiction, because the agreement covers only "employees" of Amstar and the Pinkerton guards are independent contractors. Amstar cites several paragraphs of the agreement that refer to "employees" in relation to the terms and conditions of the contract. This Court, however, finds no such restriction in the above jurisdiction clause of paragraph

two. Once the determination is made that a particular task constitutes security work in connection with the piers, paragraph two unambiguously states that that work must be performed "exclusively by members of the Union." The Union's jurisdiction is defined in terms of the type of work to be performed, regardless of the status of the persons discharging those duties. These facts coupled with the strong public policy favoring the enforcement of arbitration awards compel the conclusion that the arbitrator's decision has a rational basis, and therefore the arbitrator did not clearly exceed his authority. Amstar's first contention is without merit.

### (B).

■ The policy of limited judicial review is also applicable to Amstar's second ground for dismissal or summary judgment—Union is estopped from suing for enforcement of the award because it failed to assert its claim of representation of the guard work at the refinery for a period of six years after the new and apparently broader jurisdictional language was included in the agreement. This issue was raised at the arbitration hearing, and in his opinion, the arbitrator found that there was "no evidence" of a change in Amstar's position in reliance on the silence of the Union with resultant injury to Amstar.

■ In ordinary suits upon contracts the question of waiver or estoppel frequently arises, and certainly it is not considered that a court in finding the existence or nonexistence of estoppel has improperly amended the contract or written a new one. United Furniture Workers v. Virco Mfg. Corp., 257 F. Supp. 138, 143 (E.D.Ark.1962). Furthermore, in the instant case, Amstar's affidavits in support of its motion fail to present any new "evidence" of change of position, reliance, or consequent injury. As such, this Court finds that the arbitrator did not exceed his authority in determining that the Union was not

estopped from seeking enforcement of the award.

### (C).

Finally, Amstar claims that even if the arbitration award is valid on its face, a court cannot enforce it if, in complying with the award, one of the parties commits an unfair labor practice. Specifically, Amstar finds that there are only three ways in which it can carry out the award: (1) terminate its contract with Pinkerton and hire new employees who are members of the Union; (2) require the Pinkerton employees to become members of the Union; and (3) terminate its contract with Pinkerton and hire another independent contractor who is a member of S.T.A. and whose employees thus would be members of the Union. To follow courses (1) and (2), according to Amstar, would result in Amstar's commission of an unfair labor practice under § 8(a)(1), (2) and (3) of the National Labor Relations Act because Amstar would be denying both its hypothetical new employees and the Pinkerton employees their right not to join a union under § 7 of the Act. Pursuing course (3) also would have the effect, in Amstar's opinion, of an unfair labor practice under § 8(e), which forbids a labor organization and employer from agreeing that the latter would cease to do business with any other person.

In Glendale Mfg. Co. v. Local 520, I. L.G.W.U., 283 F.2d 936 (4th Cir. 1960), cert. denied, 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961) the Fourth Circuit refused to enforce an arbitration award, because such enforcement would have compelled the employer to commit an unfair labor practice. Under the terms of the award, the employer was required to negotiate a wage reopener with the union. Subsequent to the award, however, the union was decertified. The Fourth Circuit, therefore, found that any further negotiation between an employer and a union that no longer represented the employees would

be a violation of the employees right to organize under § 7.

The *Glendale* case presented the Court of Appeals with an unusual legal question—when two well-established public policies clearly conflict and one cannot be promoted without adversely affecting the other, which policy takes precedence? The Court in that case opted for the advancement of the statutory policy of the N.L.R.A. rather than the encouragement of arbitration, which is only a private contractual remedy. When two public policies, however, do not clearly conflict, the task confronting a court is no longer the designation of priorities between the policies in question. Rather, it is how to best effectuate *both* policies in the court's decision. A factual setting may occur in which the denial of an award's enforcement would prevent an unfair labor practice and discourage the use of arbitration while a decision granting enforcement would promote the remedial nature of arbitration but *not necessarily* cause one of the parties to commit an unfair labor practice. Since in the latter course of action, one policy is promoted without necessarily damaging the other, a court should endeavor to follow that course. *Cf.* Local 453, International Union of Elect., Radio, & Machine Workers v. Otis Elevator Co., 314 F.2d 25, 29 (2d Cir. 1963). In the instant case, this Court finds that the policies of the N.L.R.A. and arbitration do not clearly conflict, and consequently will not deny enforcement on the grounds that Amstar will commit an unfair labor practice in complying with the award.

In objecting to the hiring of new employees or forcing Pinkerton guards to join the Union, Amstar is in reality claiming that the Union's appropriate unit for collective bargaining purposes does not include the guard work at the refinery. Amstar thus concludes that an award recognizing Union as the bargaining agent of the hypothetical new employees or the Pinkerton men would violate their right as a separate unit to select their own bargaining agent pur-

suant to § 7 of the National Labor Relations Act.

Under § 9 of the N.L.R.A., the final decision on what unit is appropriate for bargaining purposes is given to the National Labor Relations Board. The Board's determination is binding, the Supreme Court has said, unless it is arbitrary, capricious or "lacking in a 'rational basis.'" N.L.R.B. v. Hearst Pub., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). Since the Board has not determined whether the security work at the refinery is within the Union's bargaining unit, the only way in which enforcement of the award would necessarily result in the commission of an unfair labor practice is if there is no rational basis for the Board to conclude that the guards were a part of the Union's bargaining unit. In other words, if the only determination that the board can arrive at is a separate unit for the guards, enforcement must be denied as violative of public policy. *Glendale, supra.*

Amstar relies on the case of Mohawk Business Machines Corp., 116 N.L.R.B. 248, 249 (1956), in which the Board stated that "a multi-employer bargaining unit is appropriate only if there is some indication that the employees in each of the constituent employer groups, which themselves would comprise natural and inherently appropriate units, have consented . . . to be represented by a single bargaining agent . . . ." Since neither Pinkerton nor the hypothetical new employees ever consented to being represented by the Union, Amstar asserts that the guard work at the refinery is a separate unit.

Amstar, however, fails to consider several other important factors that the Board has utilized in determining whether a group of unorganized employees should be included in the multi-employer units. First, the Board places great weight, although not controlling weight—Joseph E. Seagram & Sons, Inc., 101 N.L.R.B. 101 (1952)—on the bargaining history for one group of employees. *See e. g.,* Arden Farms, 118 N.L.R.B. 117 (1957); Kaiser Cement and Gypsum Corp., 158 N.L.R.B. 1740 (1966). If there is a fixed pattern of multi-employer bargaining for other employees and the multi-employer unit sought is coextensive with the multi-employer unit established for other employees, a multi-employer unit of all the employees is appropriate. *Arden Farms, supra* (dicta). Secondly, a sufficient community of interest between the represented and unrepresented employees, as opposed to an employee category with internal homogeneity or cohesiveness, has been controlling in a case in which service writers employed by auto dealers were held to be in the same multi-employer unit as service mechanics. Sacramento Automotive Ass'n, Valley Motor Car Dealers Council, 193 N.L.R.B. (No. 117) (1971).

In the present case, the Union has had 22 years of bargaining history with S. T.A. and the character of the work performed by the Pinkerton guards, i. e., security of Amstar's refinery is substantially similar to security duties on the piers. There is, thus, a sufficient basis to support a hypothetical Board determination that guard work at Amstar's refinery, is included in the Union's bargaining unit. Enforcement of the award would not necessarily result in an unfair labor practice. Since there is a valid manner in which to enforce the award, this Court need not consider allegations of unfair labor practices in violation of § 8(e) of the N.L.R.A.

Therefore, it is this 14th day of September, 1973, ordered that:

1. The motion to dismiss of defendant, Steamship Trade Association has been granted, with leave to plaintiff to file an amended complaint. Plaintiff is hereby given twenty (20) days from the date of filing hereof within which to amend its complaint.

2. The motion of defendant Amstar Corporation for summary judgment or in the alternative to dismiss is denied.