**Gerald JOYNER, et al., Plaintiffs,**

**v.**

**ABBOTT LABORATORIES, et al., Defendants.**

**No. 86–129–CIV–4.**

United States District Court,
E.D. North Carolina,
New Bern Division.

April 21, 1987.

Ernie Clark, Nashville, N.C., Sherman Rock, Morehead City, N.C., for plaintiffs.

Frank P. Ward, Jr., Thomas A. Farr, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, N.C., for Abbott Laboratories and its Chairman, CMMT and its Chairman, Chief Executive Officer or its President, and Tom Sexton.

J. David James, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers, Jackie Presser, Local 391 of Teamsters, Ralph V. Durham, Bruce D. Blevins, Russell H. Hogan, James H. Church, Charles R. Williams and Kenneth H. Mabe.

Gary S. Witlen, Washington, D.C., for Jackie Presser and the IBT, Chauffeurs, Warehousemen and Helpers of America.

John R. Edwards, Tharrington, Smith & Hargrove, Raleigh, N.C., for Leaseway Personnel, Inc., Gerald C. McDonough, Lamar Lea, Lee Lazar, Lebert DePasquale, Joe Kratowicz and Mark Gollan and H. Smith, M. Angel, Doyle Gilliam, B. Amos, and J. Sally.

## ORDER

JAMES C. FOX, District Judge.

This matter is before the court as a result of motions to dismiss or for summary judgment filed by all except seven of the twenty-four named defendants,[1] and pursu-

---

1. For ease of reference, the defendants will be hereinafter referred to as follows: "Abbott defendants"—Abbot Laboratories, Robert Schoellhorn, CMMT, Jack Rollinger, Joseph Pachnik, Charles Pregenzer, Tom Sexton, Dan Horne [sic], John Kovack, Duane Jeffries [sic], Ray Curley [sic], and Terry Dunley [sic]; "Ruan defendants"—Ruan, Inc. "and its president"; "Leaseway defendants"—Leaseway Personnel, Gerald McDonough, Lamar Lee [sic]; Lee Lazar, Hugh Smith, Mike Angel, Lebert de Pasquale, Joe Kratowitz, Mark Golden [sic], Doyle Gilliam, Betty Amos, and Jack Sally; "International defendants"—International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers, and Jackie Presser; "Local 391 defendants"—Local 391 of the Teamsters, Ralph V. Durham, Bruce D. Blevins, Russell H. Hogan, James H. Church, Charles R. Williams, and Kenneth [sic] Mabe.

ant to plaintiffs' motions to amend their complaint to add additional parties and causes of action. These matters are now ripe for disposition.

Plaintiffs initiated this action by complaint filed October 29, 1986, which, in a nutshell, alleged that all the defendants conspired together to limit the number of days to less than thirty-three in a ninety-day period that plaintiffs, "casual" truck drivers, could work for defendant Leaseway Personnel in order to prevent plaintiffs from claiming the rights of union membership. In so doing, the complaint alleges, each defendant has violated (a) plaintiffs' right to fair representation by Local 391; (b) the by-laws of Local 391; (c) the by-laws of the International union; (d) the First Amendment to the United States Constitution; (e) the Labor Management Relations Act, 29 U.S.C. § 157 *et seq.;* and (f) 15 U.S.C. § 15. Plaintiffs seek declaratory judgment, injunctive relief, and compensatory and punitive damages. Jurisdiction is alleged under 28 U.S.C. § 1331(a), 28 U.S.C. § 1343(3) and (4), 15 U.S.C. § 15, and 18 U.S.C. § 1951 and § 1952.[2]

The *full extent* of the factual predicate for plaintiffs' claims is set forth in paragraphs 16 and 17 of the complaint:

### 16.

Save and except Plaintiffs Gerald Joyner, Russell Dixon and Dwight Belty[3] it soon became apparent to plaintiffs that their eligibility to claim the rights of Union membership was that they were required to work thirty-three (33) days within ninety (90) calendar days. As each of them approached the thirty-third (33rd) day of such employment, they were no longer called in to work and others were hired to do driving that should have been assigned to them.

### 17.

This situation arose from a willful and unlawful combination and conspiracy between Abbott, Leaseway, and the Union to limit the number of regular drivers to an arbitrary figure to avoid the cost of fringe benefits due the drivers under the labor agreement and to exclude plaintiffs from that list.

On November 26 and December 23, 1986, the Ruan defendants and the International defendants respectively, filed motions to dismiss or for summary judgment.[4] On December 18, 1986, one of the law firms representing plaintiffs filed a motion to withdraw as counsel of record in both the instant case and a related case.[5] That motion was allowed by Magistrate McCotter by order filed January 28, 1987. During the hearing on that motion to withdraw, plaintiffs Clark and Barnes indicated that they no longer wished to be represented by attorney Sherman Rock who withdrew from representation of Balsamo in the related matter, but who apparently continues to represent the remainder of the plaintiffs in the instant matter. Although Clark and Barnes were directed to advise the court by February 27, 1987, as to whether and by whom they are represented, neither has formally complied. However, on March 4,

---

2. The reason for the inclusion of 18 U.S.C. §§ 1951 and 1952 as jurisdictional bases for this lawsuit is not clear. Section 1951, commonly called The Hobbs Act, is entitled "Interference with commerce by threats or violence," and is a *criminal statute.* Section 1952, also a criminal statute, prohibits "Interstate and foreign travel or transportation in aid of racketeering enterprises."

3. Paragraph 15 of the complaint states that plaintiffs Belty, Joyner and Dixon each were granted union membership and were "given membership cards, pension rights, seniority, status as regular members" and other union benefits. As the gravamen of plaintiff's complaint appears to be that defendants conspired to deny regular union member status and benefits to the plaintiffs, the undersigned is mystified by the inclusion of these three regular union members as plaintiffs.

4. Although the December 23, 1986, motion was brought on behalf of the International defendants only, a single previous motion for enlargement of time, filed November 19, 1986, was brought on behalf of the Local 391 defendants as well as the International defendants. The Local 391 defendants filed an answer on December 23, 1986, advancing a number of defenses, but have not filed a motion to dismiss or for summary judgment.

5. *Balsamo v. Abbott Laboratories,* No. 86–130–CIV–4.

1987, plaintiff Clark filed a motion to voluntarily dismiss without prejudice his claims in this matter pursuant to F.R.Civ.P. 41,[6] and stated therein that although he believes he has some meritorious claims, he has yet been unable to obtain counsel without whom he feels he cannot adequately present these claims.

On January 6 and on February 6, 1987, plaintiffs filed identical motions to amend their complaint. On January 23, 1987, the Abbott defendants filed Rule 12(b) motions to dismiss; on February 27, 1987, the Leaseway defendants filed motions to dismiss or for summary judgment. Memoranda in opposition to plaintiffs' motions to amend their complaint have been filed by all defendants. On March 4, 1987, plaintiffs filed a document entitled "Memorandum in Support of Plaintiffs' Complaint." On March 16, 1987, the Leaseway defendants filed a "Motion to Strike and for Attorney's Fees" on grounds that material contained in plaintiffs' Memorandum is "untrue, improper, irrelevant, scandalous and libelous."

It appears, therefore, that the court has before it dispositive motions by all defendants except the Local 391 defendants, as well as plaintiffs' motions to file an amended complaint and Leaseway's Motion to Strike and for Attorney's Fees.

### Plaintiffs' Motions to Amend Complaint

The two motions to amend are identical except, attached to the January 6 motion is an affidavit of proposed additional plaintiff Billy W. Carr, whereas proposed additional plaintiff George N. Boone's affidavit accompanies the February 6 motion.

By their proposed amended complaint, plaintiffs seek to make the following changes or additions:

(1) to add as parties plaintiff George N. Boone and Billy W. Carr;

(2) to add as parties defendant Ruan Leasing Co., a division of Ruan Financial Corp.,[7] Leaseway Transportation Corp., Leaseway Transportation Leasing Corp., and CMM Transportation, Inc.;

(3) to add claims that the defendants' alleged conspiracy also violated plaintiffs' rights under the "Employee Retirement Income Security Act [ERISA], 29 U.S.C. § 1001 *et seq.;* the Social Security Act, 42 U.S.C. § 401 [sic] *et seq.;* and the Rocketeer [sic] Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 *et seq."*

As to the proposed additional parties, paragraphs 15 and 16 of the proposed amended complaint omit plaintiff Joyner as one of the three plaintiffs who actually were regular union members and adds the names of proposed additional plaintiffs Carr and Boone. No explanation whatsoever is offered either for the deletion of Joyner's name therein, or for the addition as plaintiffs, of Carr and Boone who, *according to plaintiffs' own complaint,* were "given [union] membership cards, pension rights, seniority, status as regular members, ... [and] other ... alleged benefits of Union members."[8] Similarly, although plaintiffs add the names of at least four additional defendants, no explanation is offered for so doing and plaintiffs offer no clue as to these entities' alleged involvement in this matter. The only mention of any of these proposed defendants in the body of the proposed amended complaint is in paragraph 7: "Ruan Leasing Company has been licensed to do business in North Carolina since March 11, 1986." There are no jurisdictional allegations as to any of the other proposed additional defendants. As to the proposed new claims plaintiffs wish to add by amendment, there are no allegations in the proposed amended complaint which indicate in any way what specific provision of any of these three comprehensive acts has been violated or how any of the defendants have violated any of

---

**6.** This motion has been conditionally granted. *See Joyner v. Abbott Laboratories,* No. 86–129–CIV–4 (E.D.N.C. April 20, 1987).

**7.** It is not clear whether plaintiffs attempt to add Ruan Financial Corp. as a defendant, or

merely to name that entity in identification of Ruan Leasing Co.

**8.** *See supra* note 3.

the provisions of any of these three comprehensive acts.

■ While leave to amend under Rule 15 of the Federal Rules of Civil Procedure is to "be freely given when justice so requires," leave to amend may be denied when the pleading as amended is subject to dismissal. *Warren v. Nat'l Bank of Detroit*, 759 F.2d 542, 546 (6th Cir.1985); *Jones v. Community Redevelopment Agency of Los Angeles*, 733 F.2d 646, 650 (9th Cir.1984); *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.1983). When a proposed amendment is frivolous or advances a claim or defense that is legally insufficient on its face, the motion to amend should be denied. 6 Wright & Miller, Federal Practice and Procedure, § 1487 (1971).

In the present case, the plaintiffs' allegations are completely conclusory and give no hint as to how the alleged actions of the defendants violate the Social Security Act, ERISA, or RICO. Rule 8 of the Federal Rules of Civil Procedure requires that a pleading set forth a short and plain statement of the claim showing that the pleader is entitled to relief. F.R.Civ.P. 8(a)(2). While a complaint must be construed in the light most favorable to the plaintiffs, the complaint must give each of the defendants fair notice of the nature and the basis of plaintiffs' claims. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Local 1852 Waterfront Guard Ass'n of Port of Baltimore I.W.A. v. Amstar Corp.*, 363 F.Supp. 1026, 1030 (D.Md. 1973), *enforced*, 508 F.2d 839 (4th Cir.1974); *Harper v. United States*, 423 F.Supp. 192, 196 (D.S.C.1976). None of the allegations in plaintiffs' proposed amended complaint give the defendants fair notice of the nature and the basis of the plaintiffs' claims under RICO, the Social Security Act, or ERISA.

■ For instance, the courts have set out very specific requirements that a plaintiff must meet to properly allege a violation of RICO. 18 U.S.C. § 1964(c) gives a private right of action for RICO violations under 18 U.S.C. § 1962. Section 1962 has been read to require allegations that the defendants have engaged in a "pattern of racketeering activity." *Laterza v. American Broadcasting Co., Inc.*, 581 F.Supp. 408, 413 (S.D.N.Y.1984); *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042, 1045 (D.Utah 1983). Under § 1961(5) a pattern of racketeering activity is defined to require at least two acts of racketeering activity. *Sedima v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, 359 (1985); *United States v. Martino*, 648 F.2d 367, 400 (5th Cir.1981). Thus to properly allege a RICO violation, a plaintiff must allege at least two acts of racketeering activity, *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom.*, *Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984), with enough specificity to show there is probable cause that the defendant committed the crimes alleged. *Laterza v. American Broadcasting Co., Inc.*, 581 F.Supp. at 413, *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682 (N.D.Ga.1983) (RICO must be pled with same particularity required in pleading of fraud). Probable cause can only be determined if a factual basis for the "acts of racketeering" is set out with particularity in the complaint. *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. at 1045.

■ In this case, plaintiffs have done nothing but include a bare assertion that all the defendants are involved in a conspiracy and that this conspiracy violates the plaintiffs' rights under RICO. The plaintiffs have not alleged that defendants have committed at least two predicate criminal acts constituting a "pattern of racketeering activity". A bare assertion that a defendant has conspired to violate RICO does not state a cause of action under the appropriate statutes. *Id.* at 1047. Moreover, it is necessary that there be a specific allegation that the plaintiffs have been injured in their business or property by reason of a violation of RICO in order to state a proper claim for relief under that statute. 18 U.S.C. § 1964(c); *Moss v. Morgan Stanley, Inc.*, 719 F.2d at 17. No such allegation is

made by the plaintiffs in their proposed amended complaint.

Similarly, plaintiffs have failed to set out sufficient allegations to indicate in any way how the defendants have conspired to violate the Social Security Act or ERISA. The fair notice requirement of *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), is of particular importance when a conspiracy is alleged. *Waller v. Butkovich,* 584 F.Supp. 909, 931 (M.D.N.C.1984). Thus a complaint alleging a conspiracy must do more than state mere legal conclusions regarding the existence of the conspiracy. 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 8.17[5] (2d ed. 1979). Specific factual allegations showing the time and place of the conspiracy and the connection of the defendant to the injury are essential in such instances to state a cause of action. *Wetherington v. Phillips,* 380 F.Supp. 426, 428 (E.D.N.C.1974), *aff'd mem.,* 526 F.2d 591 (4th Cir.1975); *Cairo v. Skow,* 510 F.Supp. 201, 206 (E.D.Wis.1981); *Picking v. State Finance Corp.,* 332 F.Supp. 1399, 1403 (D.Md.), *aff'd,* 450 F.2d 881 (4th Cir.1971), *cert. denied,* 405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806 (1972). Bald allegations that the defendants conspired to violate certain statutes without more specific factual allegations showing the conspiracy and how it violated the plaintiffs' rights simply are not sufficient. *Waller v. Butkovich,* 584 F.Supp. at 931; *Sigler v. LeVan,* 485 F.Supp. 185, 196 (D.Md.1980).

For all of the foregoing reasons, therefore, the court in its discretion hereby DENIES plaintiffs' motions to amend their complaint.

### *Defendants' Motions to Dismiss or for Summary Judgment*

All defendants except the Local 391 defendants have filed motions for dismissal and/or for summary judgment. A number of theories have been advanced for such disposition. Some defendants contend that they must be dismissed from this lawsuit because the court cannot constitutionally exercise *in personam* jurisdiction over them. As to "Ruan, Inc. and its presi-dent," and Abbott defendants Robert Schoellhorn, Jack Rollinger, Joseph Pachnik, Charles Pregenzer, Dan Horne, John Kovack, Duane Jeffries, Ray Curley, and Terry Dunley, the court finds that Rule 12(b)(2), F.R.Civ.P. compels their dismissal from this action.

Plaintiffs bear the burden of establishing that this court has personal jurisdiction over all of the defendants. *Marshall Exports, Inc. v. Phillips,* 507 F.2d 47, 49 (4th Cir.1974); *Bryson v. Northlake Hilton,* 407 F.Supp. 73, 75 (M.D.N.C.1976). The United States Supreme Court has recently restated the constitutional requirements for the exercise of personal jurisdiction over out-of-state defendants:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *International Shoe Co. v. Washington,* 326 U.S. [310], at 319, 66 S.Ct. [154] at 160 [90 L.Ed. 95 (1945)]. By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2180–81, 85 L.Ed.2d 528 (1985) (footnotes omitted). The "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State. *International Shoe Co. v. Washington, supra,* 326 U.S., at 316, 66 S.Ct., at 158." *Id.* at 474, 105 S.Ct. at 2183. The due process "test" for determining whether an out-of-state defendant has had minimum

contacts with the forum state sufficient for the exercise of personal jurisdiction is still whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

■ Affidavits submitted in support of motions for dismissal or for summary judgment on behalf of the Ruan defendants and the Abbott defendants contain sworn statements which tend to show that neither the Ruan defendants nor the individual, non-corporate Abbott defendants (except Sexton), have had minimum contacts with North Carolina such that this court could constitutionally exercise personal jurisdiction over them. Plaintiffs not only have not filed any affidavits or other documents which in any way deny defendants' affidavits, but even plaintiffs' complaint fails to allege any basis for this court's exercise of personal jurisdiction over these defendants. Therefore, the court hereby ALLOWS the motions of "Ruan, Inc., and its president," and of the individual, non-corporate Abbott defendants, except Tom Sexton, to dismiss for lack of personal jurisdiction. F.R. Civ.P. 12(b).

■ Other theories for dismissal or for summary judgment asserted by the various defendants tend to involve the substantive claims these defendants perceive that the complaint attempts to advance. These theories are as widely divergent as the perceived claims they seek to avoid, and the undersigned is convinced that this is so because the complaint is so vague and conclusory that one can only guess at the legal and factual predicates therefor. However, the court has carefully reviewed the complaint, all the various responses thereto, has conducted independent research regarding plaintiffs' claims and has concluded that summary judgment or dismissal is not presently appropriate as to the claims of a breach of duty of fair representation, breach of collective bargaining agreement, or breach of provisions of Local 391's by-

laws and International's constitution. *See Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 163–65, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983); *Clayton v. UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed. 2d 21 (1970); *Doby v. Safeway Stores, Inc.,* 523 F.Supp. 1162 (E.D.Va.1981).

There simply are not sufficient facts of record at this time for the court to rule that these claims should or should not be dismissed, or that the remaining defendants are or are not entitled to judgment as a matter of law.[9] Therefore, as to those claims, the defendants' motions are hereby DENIED. Of course, as facts are developed, defendants are free to renew their motions.

On the other hand, as to plaintiffs' claims that defendants are liable to them for alleged violations of the Sherman Act, "29 U.S.C. § 157 *et seq,*" and the First Amendment to the United States Constitution, the court has concluded that each of these claims must be dismissed.

### A. *Sherman Act*

Plaintiffs contend that the alleged conspiracy between defendants "was a restraint on Interstate Commerce under 15 U.S.C. § 15...." The provision cited, 15 U.S.C. § 15, Section 4 of the Clayton Act, is concerned only with jurisdiction and damages by providing for a private treble damages action. It would appear, therefore, that plaintiffs intend to allege a violation of § 1 of the Sherman Act, 15 U.S.C. § 1, which in relevant part provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

The elements of a claim alleging conspiracy or combination under § 1 of the Sherman Act are well established in this circuit and others. In order to establish such a claim, the plaintiff must demonstrate:

---

9. At present, none of the defendants has filed a motion for a more particular statement pursu-

ant to Rule 12(e), F.R.Civ.P.

"(1) that the Defendants contracted, combined or conspired among each other, (2) that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets, (3) that the objects of and conduct pursuant to that contract or conspiracy were illegal, and (4) that the Plaintiff was injured as a proximate result of the conspiracy."

*Terry's Floor Fashions v. Burlington Industries,* 568 F.Supp. 205, 210 (E.D.N.C. 1983), *aff'd,* 763 F.2d 604 (4th Cir.1985); *Davis–Watkins Co. v. Service Merchandise,* 686 F.2d 1190, 1195–96 (6th Cir.1982); *Fleer Corp. v. Topps Chewing Gum, Inc.,* 658 F.2d 139, 147 (3d Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1715, 72 L.Ed.2d 137 (1982).

■ In this regard, a plaintiff must allege *specific facts* which show a lessening of competition in interstate commerce as a result of the conspiracy. Absent specific allegations showing what anti-competitive effects in the particular market were caused by the alleged conspiracy, the plaintiff's case will be dismissed for failure to state a claim. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984); *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir.1980); *Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 274–75 (5th Cir.1979); *Armco Steel Corp. v. United Mine Workers,* 505 F.2d 1129, 1134 (4th Cir.1974), *Hsing Chow v. Union Central Life Ins. Co.,* 457 F.Supp. 1303, 1306–08 (E.D.N.Y. 1978).

■ Assuming, *arguendo,* the truth of plaintiffs' conspiracy allegations, the question remaining is whether the restraint resulting from that conspiracy is the type of restraint prohibited by the Sherman Act. Plaintiffs contend that they were deprived of regular employment as a result of a conspiracy among defendants to limit the number of regular employees. In other words, plaintiffs allege a restraint upon their own labor. For purposes of the antitrust laws, however, "the labor of a human being is not a commodity or an article of commerce." 15 U.S.C. § 17. *See also* *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 503, 60 S.Ct. 982, 997, 84 L.Ed. 1311 (1940) ("Since the enactment of the declaration in § 6 of the Clayton Act [15 U.S.C. § 17] . . . it would seem plain that restraints on the scope of the sale of the employees' services to the employer, however much they curtail the competition among employees, are not in themselves combinations or conspiracies in restraint of trade or commerce under the Sherman Act."); *Local Union 808, Int'l Brotherhood of Teamsters v. P & W R. Co.,* 576 F.Supp. 693, 696–97 (D.Conn.1983) ("To assure that the Sherman Act was applied in accordance with its original purpose, Congress enacted the Clayton Act. . . . Given this statutory limit on the scope of the antitrust laws, [plaintiffs' Sherman Act allegation] fails to state a claim on which relief can be granted insofar as it alleges a conspiracy to prevent individual plaintiffs from working."); *Daley v. St. Agnes Hospital, Inc.,* 490 F.Supp. 1309, 1317 (E.D.Pa.1980); *Taterka v. Wisconsin Telephone Co.,* 394 F.Supp. 862 (E.D.Wis.1975); *Kolb v. Pacific Maritime Ass'n,* 141 F.Supp. 264 (N.D.Cal.1956).

There is an additional reason why the conspiracy alleged here is not prohibited by the Sherman Act. The Sherman Act applies *only* to combinations and conspiracies intended to restrict commercial competition among business entities. In *Apex Hosiery,* the Supreme Court stated:

[The Sherman Act] was enacted in the era of "trusts" and of "combinations" of businesses and of capital organized and directed to control of the market by suppression of competition in the marketing of goods and services, the monopolistic tendency of which had become a matter of public concern. The end sought was the prevention of restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services, all of which had come to be regarded as a special form of public injury. . . .

[S]ome form of restraint of commercial competition has been the sine qua non to

the condemnation of contracts, combinations or conspiracies under the Sherman Act.... Restraint on competition or on the course of trade in the merchandising of articles moving in interstate commerce is not enough, unless the restraining is shown to have or is intended to have an effect upon prices in the market or otherwise to deprive purchasers or consumers of the advantages of free competition. 310 U.S. at 492–93, 500–01, 60 S.Ct. at 996–07 (footnotes and citations omitted).

As *Apex Hosiery* makes clear, the conspiracy alleged in this complaint is simply not the kind of conspiracy at which the Sherman Act was directed. The complaint lacks any suggestion that defendants conspired to suppress or restrain commercial competition, and it is inconceivable that the alleged conspiracy could have such an effect. *See Stearns v. Genrad, Inc.,* 752 F.2d 942, 945 (4th Cir.1984) ("violation of antitrust laws not compensable unless violation occasioned an antitrust injury"). For this reason, as well as the fact that labor is not a commodity or article of commerce, plaintiffs have failed to state a claim for violation of § 1 of the Sherman Act. Therefore, plaintiffs' claim that the alleged conspiracy among defendants violated their rights under the Sherman Act is hereby DISMISSED as to *all* the defendants for failure to state a claim upon which relief may be granted. F.R.Civ.P. 12(b)(6).

### B. *29 U.S.C. § 157 et seq.—Unfair Labor Practice*

■ Next, plaintiffs contend that the alleged conspiracy among defendants "is in violation of plaintiffs' rights guaranteed by the Labor Management Relations Act, 29 U.S.C. § 157 *et seq.* ...." While not entirely clear, it appears that plaintiffs are claiming a violation of 29 U.S.C. § 158(a)(1). That section provides: "It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in Section 7 [29 U.S.C. § 157]."

This court is is not the proper forum for plaintiffs' unfair labor practice claim. Unfair labor practices are within the primary and exclusive jurisdiction of the National Labor Relations Board. 29 U.S.C. § 160; *San Diego Building Trades v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Amalgamated Clothing Workers v. Richman Bros.,* 348 U.S. 511, 516–17, 75 S.Ct. 452, 455–56, 99 L.Ed. 600 (1955); *Garner v. Teamsters,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953); *Amazon Cotton Mill Co. v. Textile Workers Union,* 167 F.2d 183 (4th Cir.1948). As the Supreme Court explained in *Garner:*

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and note, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid those diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.... A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.

346 U.S. at 490–91, 74 S.Ct. at 165–66. In short, this court may not adjudicate plaintiffs' claim for violation of rights secured by 29 U.S.C. § 157. Instead, it "must defer to the exclusive competence of the National Labor Relations Board." *Garmon,* 359 U.S. at 245, 79 S.Ct. at 780. Therefore, because this court lacks subject matter jurisdiction over plaintiffs' LMRA claims, these claims are hereby DISMISSED as to *all* defendants pursuant to F.R.Civ.P. 12(b)(1).

### C. *First Amendment*

■ It is elementary constitutional doctrine that the first amendment only restrains governmental actions. *See, e.g., Central Hardware Co. v. NLRB,* 407 U.S. 539, 547, 92 S.Ct. 2238, 2243, 33 L.Ed.2d

122 (1972); *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972); *Public Utilities Comm'n of the District of Columbia v. Pollack*, 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952). Plaintiffs have not alleged any governmental involvement, nor have they alleged that the defendants acted under color of governmental authority. The Supreme Court has squarely held that "a conspiracy to violate First Amendment rights is not made without proof of state involvement." *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 832, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). Accordingly, plaintiffs have failed to state a first amendment claim. Therefore, as to *all* the defendants, plaintiffs' claim that defendants violated their constitutional rights guaranteed by the first amendment is DISMISSED for failure to state a claim upon which relief may be granted. F.R.Civ.P. 12(b)(6).

### *Plaintiffs' "Memorandum in Support of Plaintiffs' Complaint"*

On March 4, 1987, counsel for plaintiffs filed a paperwriting entitled "Memorandum in Support of Plaintiffs' Complaint." This document, although signed by counsel for plaintiffs, was unverified, and was not accompanied by any affidavits or other documents. Thus, to the extent that this Memorandum was filed in contravention of defendants' motions for summary judgment, it is ineffective.[10]

However, the great bulk of this Memorandum appears to be devoted to plaintiffs' theory of the history, purposes, and present applicability of "civil RICO." It includes a dissertation on "sweetheart" contracts, organized crime, and the accusation that the "so-called collective bargaining agreement between ... Leaseway and ... Local 391 ... *is* the violation of 18 U.S.C. 1961 *et seq.* at section 1964(a) § (c)." The Memorandum concludes with a request

that the court deny defendants' motions and require all of them to file responsive pleadings.

The court has herein denied plaintiffs' motions to amend their complaint to include the bare allegation that the purported conspiracy among defendants violated RICO, because the proposed amended complaint simply failed to comport with pleading requirements that a factual predicate for such action must be alleged. The memorandum filed simultaneously with plaintiffs' motion to amend their complaint and in support thereof offered absolutely no such support. The court knows of no Federal Rule of Civil Procedure or Local Rule providing for a Memorandum in Support of a Complaint, and thus questions the propriety of considering the same in conjunction with the instant motions. However, the court has treated it as a Local Rule 4.05, E.D.N.C., memorandum in response to the Leaseway defendants' "motion to dismiss or in the alternative for summary judgment and in opposition to plaintiffs' motion to amend the complaint"—the only such motion to which a response could have been *timely* filed.

On March 16, 1987, the Leaseway defendants filed a "Motion to Strike and for Attorney's Fees" requesting that the court strike plaintiffs' "Memorandum in Support of Plaintiffs' Complaint" because it contains "untrue, improper, irrelevant, scandalous and libelous" material. The motion listed the passages from plaintiffs' Memorandum which allegedly are libelous. Plaintiffs have filed no response.

The undersigned is constrained to agree that the passages recited from pages 12, 13 and 14 of the Memorandum are, at a minimum, scandalous, and hereby ORDERS those passages STRICKEN pursuant to F.R.Civ.P. 12(f). As Leaseway has not cited a basis for the award of attorney's fees in this situation, the court hereby DENIES the motion for attorney's fees in conjunc-

---

**10.** Rule 56(e) provides in pertinent part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

**196**

tion with the striking of the objectionable material.

*Summary*

In summary, plaintiffs' motions to amend their complaint are DENIED. The following defendants are DISMISSED from the action for lack of personal jurisdiction, F.R. Civ.P. 12(b)(2): "Ruan, Inc. and its president," Robert Schoellhorn, Jack Rollinger, Joseph Pachnik, Charles Pregenzer, Dan Horne, John Kovack, Duane Jeffries, Ray Curley, and Terry Dunley. The following claims are DISMISSED for failure to state a claim upon which relief may be granted: that defendants have violated plaintiffs' rights under the First Amendment to the United States Constitution and under the Sherman Act. Plaintiffs' claim of an alleged violation of 29 U.S.C. § 157 *et seq.* (unfair labor practices) is DISMISSED for lack of subject matter jurisdiction, F.R.Civ. P. 12(b)(1). The excerpts from plaintiffs' Memorandum in Support of Plaintiffs' Complaint, at pages 12, 13 and 14 as set out in Leaseway's Motion to Strike the same, are STRICKEN pursuant to F.R.Civ. P. 12(f). Leaseway's motion for attorney's fees in conjunction with the Rule 12(f) ruling is DENIED.

SO ORDERED.